DALLAS COUNTY LEVEE DISTRICT No. 2 ET AL. v. B. F. LOONEY,
ATTORNEY GENERAL.

No. 3139. Decided December 18, 1918.

**1.—Constitutional Law—Reclamation District—Repeal.**

Validity of bonds of a levee district issued under and in compliance with
the Act of March 21, 1918 (Laws, 35th Leg., 4th Called Session, ch. 44, p.
41—the Canales Law), were unaffected by the question whether section 52 of
article 3, of the Constitution, was repealed by adoption of the amendment of
1917 (Conservation Amendment). (P. 331.)

**2.—Same.**

The adoption in 1917 of the amendment to the Constitution known as the
Conservation Amendment (Const., sec. 59, art. 16, Act of March 19, 1917,
Laws, 35th Leg., p. 500), did not repeal subdivisions A and B, of section 52,
of article 3, of the Constitution. The amendment was a distinct provision and
for a distinct purpose, the creation of improvement districts free from the
limitations of the former constitutional provision, leaving that in force for
districts choosing to organize with its limited taxing power. (P. 331.)

**3.—Statute—Amendment by Reference to Title.**

The Act of March 21, 1918 (Laws, 35th Leg., 4th Called Session, ch. 44, p.
41—known as the Canales Law), is not an amendment of the Act of April 1,
1915 (Laws, 34th Leg., ch. 146, pp. 229-249), nor invalid as an attempt to
amend the earlier Act by reference to its title (Const., art. 3, sec. 6). It
neither added to nor took away anything from such former Act, but left it
intact,—its only effect being to incorporate that Act, neither altered nor
amended, for certain purposes, into the later Act, a familiar and permissible
legislative method. Quinlan v. Houston & Texas Central Ry. Co., 89 Texas,
356, followed. (Pp. 331, 332.)

**4.—Taxation—Local Improvement—Apportionment by Ad Valorem
Taxes.**

Taxation for local improvements, unlike that for general governmental
support, is apportioned among owners of property according to the benefits
received from the improvement. But it is a part of the legislative power to
determine the proper method of such apportionment. And this may be exer-
cised by imposing an ad valorem tax upon all property, real and personal,
within the taxing district, where the Legislature determines that all would be
benefited proportionally to its value. (Pp. 332, 336.)

**5.—Same.**

The declaration in a constitution that the taxes for local improvement which
it authorizes shall be "equally distributed" gives no additional force to the
general principles governing the apportionment of such taxes, and does not
prevent the Legislature from apportioning same by providing for an ad valorem
tax on all the property in the district where it deems that a just method, the
resulting benefit being not substantially disproportionate to the taxable value
of the property. (Pp. 332, 333.)

**6.—Legislative Discretion—Judicial Review.**

The exercise of legislative discretion in the method selected for apportion-
ing the benefit from local improvements will not be revised by the courts unless
that pursued is so arbitrary and unfair as to amount to an abuse of legislative
power. (Pp. 333, 334.)

**7.—Statutes—Repeal by Implication.**

The statute known as the Laney Act (Act of April 2, 1918, Laws, 35th Leg., 4th Called Session, ch. 44, p. 97) did not repeal the previous law by the same Legislature, known as the Canales Act (Act of March 21, 1918, Laws 35th Leg., ch. 44, p. 41). Their provisions and purposes are different. The first enactment (Canales Law) was to provide a method whereby certain districts organized under the former Act of 1915 and limited in their taxing powers by art. 3, sec. 52, of the Constitution, under which that Act was passed, could become conservation and reclamation districts and avail themselves of the enlarged taxing powers permitted by the amendment to the Constitution (art. 16, sec. 59). The principal purpose of the later Act (Laney Law) was to provide for the creation of original districts with such ampler powers. (Pp. 336, 337.)

**8.—Same.**

Implied repeals are not favored. And such implication can not be indulged in the case of two Acts by the same Legislature where the later one expressly declares that it shall not be construed as repealing any law upon its subject passed at that session, but that any such law shall be deemed cumulative of it. (P. 336.)

Original application by the levee district for writ of mandamus against Looney, as Attorney General, to require him to approve bonds issued by the complainant.

*W. M. Harris, John H. Sharp,* and *G. C. Groce,* for relator.—There is no provision of our Constitution which prevents a statute from, by proper reference to another, incorporating in it the provisions of the Act referred to, and the references in the Canales Act to and its adoption of, the provisions of the Levee Act of 1915, had the effect to make the provisions so referred to and adopted parts of the new Act. This is a well recognized method of legislation, is permissible, and was, in no sense, an amendment of the Act of 1915, and the provisions of section 36, article 3, of the Constitution have no application: Quinlan v. H. & T. C. Ry. Co., 89 Texas, 356-372; Houston & T. C. Ry. Co. v. State, 95 Texas, 520; English, etc., Mortgage Co. v. Hardy, 93 Texas, 300; People v. Banks, 67 N. Y., 575; Sutherland, Stat. Const., secs. 132-257.

The Legislature had authority to confer additional powers on levee improvement districts organized under previous laws. The laws permitting the organization of such districts are subject to change, amendment or alteration as are any other laws. Houck v. Little River Drainage Dist., 239 U. S., 254; New Orleans v. N. O. Waterworks Co., 142 U. S., 79; Worcester v. Worcester Consolidated Str. Ry. Co., 196 U. S., 539.

Constitutional provisions and laws relating to the same subject matter, and especially laws passed at the same session of a Legislature, are to be construed together, and a construction must be given, if possible, that will render all such provisions and laws effective. City of San Antonio v. Toepperwein, 104 Texas, 43; Ex parte Cooks, 135 S. W., 139; Cannon v. Vaughan, 12 Texas, 399-402; Lovett v. Casey, 17 Texas, 596; Scoby v. Sweatt, 28 Texas, 713-727; Austin v. Gulf, C. & S. F. Ry. Co., 45 Texas, 234; Laughter v. Seela, 59 Texas, 177; McGrady v. Terrell, 98 Texas, 427; Conley v. Daughters of the Republic, 106 Texas, 80;

Garrison v. Richards, 107 S. W., 861; Houston v. Koonce, 106 Texas, 50; Sutherland, Stat. Const., sec. 286.

What the Legislature ordains and the Constitution does not prohibit, is always lawful, and in construing laws they must be held valid unless unconstitutionality plainly appears. A statute, if capable thereof, will be given a construction which will render it valid rather than one which will place it in conflict with the Constitution. State v. Galveston, H. & S. A. Ry. Co., 100 Texas, 153-170; Missouri, K. & T. Ry. Co. v. State, 109 S. W., 867; Solon v. State, 114 S. W., 349; Long v. State, 127 S. W., 208; Bonner v. Belsterling, 137 S. W., 1154; Tone v. City of Denison, 140 S. W., 1189.

Legislation in principle like that herein in controversy has been so often held immune from constitutional attack that the rule of a stare decisis should apply, unless there is a clear distinction between this and adjudicated cases, so broad that the unconstitutionality of the legislation herein involved is apparent beyond question. Wurts v. Hoagland, 114 U. S., 606; Fallbrook Irg. Dist. v. Bradley, 164 U. S., 112; Houck v. Little River Drg. Dist., 239 U. S., 254; French v. Barber Asph. Paving Co., 181 U. S., 324; Des Moines & Miss. Levee Dist. No. 1 v. Chicago, B. & Q. Ry. Co., 145 S. W., 35; Alcorn v. Bliss-Cook Oak Co., 201 S. W., 797; Dorsey L. & L. Co. v. Board of Directors, 203 S. W., 33; In re Bonds Medera Irg. Dist., 14 L. R. A., 755.

The very Legislature that submitted the conservation amendment construed it by the legislation enacted under it at its next session after the adoption of such amendment as giving it the power to enact the legislation herein involved, and that construction should be followed by the courts unless invalidity is apparent beyond a reasonable doubt, as we contend it is not. Ashford v. Goodwin, 103 Texas, 491; Dowdell v. McBride, 92 Texas, 239-240; State v. McAlister, 88 Texas, 284-286.

*B. F. Looney,* Attorney General, and *W. P. Dumas,* Assistant, for respondent.—If a constitutional amendment does not in terms expressly repeal a constitutional provision, yet if it covers the same subject provided for in such provision, the amendment will be regarded as a substitute for it and as suspending it. 12 Corpus Juris, 724; Willcox v. Edwards, 162 Cal., 455; State v. Capdevielle, 135 La., 669, 677; People v. Angle, 109 N. Y., 564; Popfinger v. Yutte, 102 N. Y., 38; State v. Creamer, 83 Ohio St., 412.

An amendment duly adopted is a part of the Constitution and is to be construed accordingly. It can not be questioned on the ground that it conflicts with pre-existing provisions; on the contrary, if there is a real inconsistency the amendment must prevail because it is the latest expression of the will of the people. In such a case there is no room for the application of the rule as to harmonizing inconsistent provisions. Hammond v. Clark, 136 Ga., 313; Chicago v. Reeves, 220 Ill., 274; Gillespie v. Lightfoot, 103 Texas, 359; State v. Brownson, 94 Texas, 436; Cummins v. Gaston, 109 S. W., 476.

The conservation amendment requires that the taxes in conservation and reclamation districts shall be "equitably distributed," thereby prescribing a rule that must be followed. The requirement that the taxes in such districts shall be "equitably distributed" was no doubt incorporated as a proviso to restrict the broad powers granted by this amendment. Egyptian Levee Co. v. Hardin, 27 Mo., 495.

No law shall be revived or amended by reference to its title, but in such case the Act revived or the section or sections amended shall be re-enacted and published at length. Const., art. 3, sec. 36; Henderson v. Galveston, 102 Texas, 163; Ex parte Woo Jan, 228 Fed., 927, 941; United States v. Lapp, 244 Fed., 377, 383; Womack v. Gardner, 10 Texas Civ. App., 367.

The Laney Act repeals all former legislation on the subject of levee improvement districts. Jesse v. Deshong, 105 S. W., 1011, 1014; Neil v. Keese, 5 Texas, 33; Ragazine v. State, 84 S. W., 832, 833 (citing Cain v. State, 20 Texas, 355; Chiles v. State, 1 Texas App., 27; Holden v. State, 1 Texas App., 225; Davis v. State, 2 Texas App., 425; Bryan v. Sundberg, 5 Texas, 418).

MR. CHIEF JUSTICE PHILLIPS delivered the opinion of the court.

The object of this action is to require the Attorney General's approval of certain bonds issued by Dallas Levee District No. 2 under the Canales Act of the Thirty-fifth Legislature. Chap. 25, Acts of Fourth Called Session. The right to the mandamus depends upon the constitutionality of that Act, and whether, if constitutional, it is still in force. These, therefore, are the questions presented for decision.

Formerly, our only constitutional provision authorizing the creation of levee districts and their issuance of bonds for levee purposes was that contained in section 52 of article 3. It limits the indebtedness that may be incurred by any or all the districts which may be formed under it to one-fourth of the assessed valuation of the real property within the district or territory affected. It was given effect as to levee improvements by the Levee Improvement District Act of 1915, which we shall refer to as the Act of 1915. Chap. 146, Acts of 1915. That is an elaborate Act, and it is unnecessary to detail its provisions. It is enough to say that it authorizes the creation of such districts under appropriate procedure, with the power, after due election, to issue bonds within the limits of the constitutional provision for the purpose of such improvement and levy ad valorem taxes upon all property within the district for their payment.

Later, what is known as the conservation amendment to the Constitution was proposed by the Legislature and adopted by the people in 1917. It constitutes section 59 of article 16, Acts of 1917, Regular Session, 500. It provides for the creation within the State of such number of conservation and reclamation districts as shall be essential to accomplish its purposes, with the power, under legislative authority and as may be so prescribed, by the issuance of bonds to incur all such indebted-

ness as may be necessary to provide and maintain the improvements contemplated, and to make provision for its payment by the levy and collection within the district of all such taxes, "equitably distributed" as may be necessary therefor,—the indebtedness to constitute a lien upon the property assessed for its payment, and not to be authorized by the Legislature except upon a prior adoption of the proposition by the qualified property tax paying voters of the district.

At its Fourth Called Session, the Thirty-fifth Legislature—the same that had proposed the amendment—undertook to make it effective by two distinct Acts; one the Canales Act, being the first adopted, and the other the Laney Act. Chap. 44, Acts of Fourth Called Session.

The Canales Act provides that any water improvement district, drainage district, or levee improvement district, heretofore or hereafter organized under the laws of the State as a defined district under section 52 of article 3 of the Constitution, may, under a prescribed procedure, avail itself of the benefits of the conservation amendment, that is, section 59 of article 16, and thereby become "a conservation and reclamation district" under the Act without change of name. As to such districts so becoming districts under the Act, it is declared that all limitations of indebtedness and taxes imposed by section 52 of article 3 or any law, are removed, and that they may incur indebtedness to fully carry out their purposes, and levy taxes for its payment and their maintenance and operation.

As to any levee improvement district availing itself of the benefits of the Act and becoming thereunder a conservation and reclamation district, it is provided that it shall be governed and controlled by the Act of 1915 and amendments thereof, except as provided by the Act.

Dallas County Levee District No. 2 was organized under the Act of 1915 and has already outstanding bonds issued as authorized by that Act in the amount of $108,000.

On May 23, 1918, in the manner provided by the Canales Act it was constituted a conservation and reclamation district under that Act. Thereafter, availing itself of the privileges of that Act and to enable it to fully protect its lands from overflow, the bonds in controversy— an issue of $69,000—were thereunder duly voted and authorized; the proceedings had in that respect, including the levy of the tax, being in accordance with the Act of 1915, as provided by the Canales Act.

The Attorney General has declined to approve the bond issue upon four grounds:

1. That the adoption of the conservation amendment to the Constitution had the effect to supersede subdivisions A and B of section 52 of article 3, and hence the attempt of the Canales Act to authorize the creation of levee districts under the Act of 1915 and the levy of ad valorem taxes for the payment of bonds issued by its authority, was ineffectual.

2. That the Canales Act, in its declaration that a levee district becoming thereunder a conservation and reclamation district shall be

governed and controlled by the Act of 1915, is invalid in that this was but an attempt to amend the Act of 1915 by mere reference to its title.

3.  That the Canales Act, in its authorization, through its reference to the Act of 1915, of the levy of ad valorem taxes for the payment of bonds issued by a levee district availing itself of its provisions, is invalid in that taxes of that character for such an improvement do not constitute taxes "equitably distributed," as required by the conservation amendment.

4.  That the Canales Act was by implication repealed by the Laney Act passed at the same session.

As to the first ground, it is immaterial, so far as this case is concerned, whether or not subdivisions A and B of section 52 of article 3 were repealed by the conservation amendment.  The bonds in controversy do not purport to have been authorized under section 52 of article 3.  Attempt has been made to have them issued under the conservation amendment as made effective by the Canales Act and their validity is hence to be tested by that amendment.

In our opinion, however, no repeal of subdivisions A and B of section 52 of article 3 resulted from the adoption of the conservation amendment.  The conservation amendment is a distinct constitutional provision and had an equally distinct purpose.  That purpose was to authorize the creation of certain of the improvement districts dealt with by section 52 of article 3, freed from the limitation upon their taxing power imposed by that section.  It was not intended to interfere with the organization of such districts as might desire to rest under that limitation.  For this reason it was proposed and adopted, not in any sense as an amendment of section 52 of article 3, but as an original and independent provision.  It was doubtless recognized that while in some parts of the State the needed improvement might be well accomplished within the taxing limits of section 52 of article 3, yet in others conditions were such as to render those limits inadequate for the purpose.  The design, therefore, was not to supplant an existing taxing power, but to create an additional one. .  It was not to prevent the creation of districts of the limited authority elsewhere conferred in the Constitution, but simply to provide for the formation of districts of the ampler authority given by the amendment.  There is, accordingly, no inconsistency between the amendment and section 52 of article 3, and the latter was not repealed by the former.

The Canales Act in no respect amends the Act of 1915, and is, therefore, not open to challenge as an attempt to amend that Act by reference to its title.  It merely provides that an improvement or levee district previously or thereafter organized under the laws of the State, may, by following certain procedure as prescribed in the Act of 1915 and upon the order of the Commissioners Court entered of record, become a conservation and reclamation district without change of name or impairment of its obligations; and that any levee district so becoming a conservation and reclamation district under its authority shall be

governed by the Act of 1915 and its amendments, except as by it otherwise provided. Provisions of this character add nothing to, and take nothing from, the Act of 1915. They leave it intact. Their only effect is to incorporate that Act for certain purposes into the Canales Act. It is readily to be seen that it is so incorporated in its full integrity, and in nowise altered or amended. This is a familiar and permissible legislative method. Quinlan v. Houston & T. C. Ry. Co., 89 Texas, 356, 34 S. W., 738.

The third objection presents the broad question as to whether the requirement of the conservation amendment that taxes for the district indebtedness there authorized shall be "equally distributed," amounts to a prohibition of any power in the Legislature to provide for their levy upon the ad valorem plan.

Taxes, in their very nature, require apportionment, and can not otherwise be levied. The power of apportionment is a part of the power to tax. The two are inseparable. The question, therefore, is one of importance, since it vitally affects the legislative authority to lay the taxes contemplated by the amendment.

Taxation for local improvements,—as provided for by the amendment, is to be distinguished from general taxation for governmental purposes. It proceeds upon a different theory, and hence is governed by some principles not of universal application. The authority for its imposition is derived from the general sovereign power of taxation, but this distinction is such as to have caused such taxes to be called by a different name. They are accordingly generally denominated "special assessments."

General taxes are laid in return for the general benefits which government bestows and as a means for its administration. Taxes for local improvements are levied in return for the special benefits resulting from the improvement, and possess no other function. Since the benefit is local, they are exacted exclusively from those who receive it, upon the principle that "while the few ought not to be taxed for the whole, the whole ought not to be taxed for the few." It is this nature of the tax which, under the application of constitutional guaranties, has given rise to the doctrine, now generally affirmed, that such taxes can not be laid upon the property affected in substantial excess of the benefit it derives, but must be founded upon benefits and proportioned to benefits. Norwood v. Baker, 172 U. S., 269, 43 L. Ed., 443, 19 Sup. Ct., 187; Hutchinson v. Storrie, 92 Texas, 685, 51 S. W., 848, 71 Am. St., 884, 45 L. R. A., 289.

The declaration of the amendment that the taxes shall be "equally distributed" simply means that they must be fairly proportioned according to benefit to the property taxed, which is only another way of saying that in the light of the doctrine just referred to they must be justly levied. In a word, they must fairly represent the benefit to the property. Independently of this requirement of the amendment, they could not, without express constitutional provision to the contrary, be imposed

according to any method less just or fair. This language, therefore, gives no additional force to the general principle which, even in its absence, would govern the manner of the levy.

The measure of benefit that will accrue to property from a local improvement is at best but an approximation, and hence there is no general principle of constitutional law that in the imposition of such taxes limits 'the legislative power to the exact amount of pecuniary benefit which the particular property derives. While in some instances the benefit may be generally distributed throughout the district, in others it may be more confined. As stated by Judge Cooley, there is, accordingly, no universal rule of justice by which such taxes can be imposed. A rule for their apportionment that would be just in one case might be oppressive in another. For this reason, as is announced by the same author, the method for apportioning such taxes is, as a rule, wisely confided to the Legislature, and could not, without the introduction of some new principle in representative government, be placed elsewhere. Cooley on Taxation, 1180. The exercise of this legislative discretion will. not be revised by courts unless the method prescribed is one so arbitrary and unfair as to amount to an abuse of legislative power.

Two methods are generally availed of for the apportionment of such taxes. One is the appointment of commissioners with authority to examine the district and apportion the tax according to their determination of the benefits that will be received. This is characterized as the assessment of net benefits to the particular property and a corresponding apportionment of the tax, and is the method which the Attorney General contends may alone be prescribed by the Legislature under this amendment. The other is a determination by the Legislature itself that the benefits will be in proportion to *value*, area or frontage, and apportionment accordingly. Cooley on Taxation, 416, 1205. The first may be the fairer method, but in the absence of express constitutional provision for a different rule, either is permissible. Idem, 416.

It is clear that the conservation amendment does not undertake to prescribe any given rule for making the apportionment. It provides no express method by which the benefit to the particular property—the subject of the tax—shall be ascertained, and accordingly refrains from the adoption of any express basis for the apportionment of the tax. The effect of the declaration simply is that it shall be justly laid in fair proportion to the benefit. If it is so apportioned, there can be no question but that an "equal distribution" of the taxes will be accomplished within the full meaning of the term. The basis of apportionment, therefore, is by the amendment left to the Legislature.

It can not be said as a matter of law that a rule which apportions taxes of this character according to the value of the property affected is one plainly arbitrary and unfair. It is a veteran rule for the apportionment of property taxes, sanctioned by immemorial usage and universally applied. It is the one most familiar to the people. Its general justice is not open to challenge. It is an approved method for

the apportionment of taxes of this kind. Its adoption was a matter of legislative discretion.

It has been repeatedly held by the Supreme Court of the United States that legislative Acts providing for the levy of taxes for local improvements according to the value of the property affected are not arbitrary. Mattingly v. District of Columbia, 97 U. S., 687, 24 L. Ed., 1098; Fallbrook Irrigation District v. Bradley, 164 U. S., 176, 47 L. Ed., 369, 17 Sup. Ct., 56; Bauman v. Ross, 167 U. S., 548, 42 L. Ed., 270, 17 Sup. Ct., 966; Webster v. Fargo, 181 U. S., 394, 45 L. Ed., 912, 21 Sup. Ct., 623; Houck v. Little River District, 239 U. S., 254, 60 L. Ed., 266, 36 Sup. Ct., 58.

In Fallbrook Irrigation District v. Bradley, this was said:

"Assume that the only theory of these assessments for local improvements upon which they can stand is that they are imposed on account of the benefits received, and that no land ought in justice to be assessed for a greater sum than the benefits received by it, yet it is plain that the fact of the amount of benefits is not susceptible of that accurate determination which appertains to a demonstration in geometry. Some means of arriving at this amount must be used, and the same method may be more or less accurate in different cases involving different facts. Some choice is to be made, and where the fact of some benefit accruing to all the lands has been legally found, can it be that the adoption of an ad valorem method of assessing the lands is to be held a violation of the Federal Constitution? It seems to us clearly not. It is one of those matters of detail in arriving at the proper and fair amount and proportion of the tax that is to be levied on the land with regard to the benefits it has received, which is open to the discretion of the State Legislature, and with which this court ought to have nothing to do. The way of arriving at the amount may be in some instances inequitable and unequal, but that is far from rising to the level of a constitutional problem and far from a case of taking property without due process of law."

In other jurisdictions the same holding has been many times announced. Downer v. City of Boston, 7 Cush. (Mass.), 277, and Wright v. City of Boston, 9 Cush., 233,—by Chief Justice Shaw; Gibson v. Commissioners, 128 Ind., 65, 11 L. R. A., 835, 27 N. E., 235; Commissioners v. Harrell, 147 Ind., 500, 46 N. E., 124; Burnett v. Mayor, etc., of Sacramento, 12 Cal., 76, 73 Am. Dec., 518; Re Bonds of Madera Irrigation District, 92 Cal., 296, 27 Am. St., 106, 14 L. R. A., 755; Lockwood v. City of St. Louis, 24 Mo., 20; Gilmore v. Hentig, 33 Kan., 156, 5 Pac., 781; St. Louis S. W. Ry. Co. v. Board of Directors, 81 Ark., 562, 99 S. W., 843; Dorsey, etc., Co. v. Board of Directors, 203 S. W., 33.

In Burnett, etc., v. City of Sacramento it was declared:

"The law in question avoids the injustice of general taxation for local purposes, and lays the burden upon the recipients of the benefit. It apportions the tax according to the assessed cash value of the adjacent

property, which is as near an approximation to an equitable rule as can well be established. No rule could be adopted which would work absolute equality. An approximation to it is all that can be attained. The power of apportionment, with the power of taxation, is exclusively in the Legislature. The Constitution contains no inhibition to the tax, and prescribes no rule of apportionment. Security against the abuse of the power rests in the wisdom and justice of the members of the Legislature, and their responsibility to their constituents."

The justification of taxes for local improvements is that the property affected will, to the extent of the benefit derived, be enhanced in value. The value of the benefit is the thing to be arrived at, by some method which will provide fairly for its ascertainment and a consequent equitable distribution of the tax. An apportionment which estimates the benefit according to position, frontage, or area of the land affected, either of which is ordinarily a permissible method, might, according to the nature of the particular improvement, afford the fairer basis. Yet in a large sense this would be substantially but a laying of the tax in proportion to its value, since these are elements which materially determine the value of land within any such district. If the estimation of net benefits to particular land be undertaken and the tax be apportioned accordingly, largely the same result would follow, inasmuch as these same elements would equally in substantial measure determine the extent of the benefit. It is these considerations and the difficulties which inhere in formulating a method which will operate with exact justice that makes a levying of the tax according to the value of the property affected "as near an approximation to an equitable rule as can well be established."

This rule assumes that the benefit to the property will accrue in proportion to its value—that it will add to its former value in a measure fairly corresponding to that value. This is consistent with the theory upon which a district under the Canales Act is presumably formed. It would be impossible to create a district in which all the property therein is benefited in the same degree, and the law never demands the impossible. But the theory upon which a district is formed under the Canales Act is that all the property within the district will be benefited by the improvement in substantially the same relative degree. To accomplish such a distribution of benefits is the aim of the Act. It is this which justifies the inclusion under it of particular property within the bounds of a single district. The contemplation is that the resulting benefit to the property throughout such a district will not be substantially disproportionate, but relatively equal. If the property be relatively benefited, its value, to the extent of the benefit, will be increased in the same relative degree. A tax, therefore, imposed according to its relative value will, with fair approximation, represent the benefit and be in just proportion to the benefit, which is the end of the law in such taxation.

It is possible, of course, for land within districts of this character

which is less valuable to receive a greater benefit from the improvement than that which is more valuable; and it may be argued with reason that when in such a case the land is taxed only according to its value, it is not made to pay in just proportion to the benefit. It is permissible for the Legislature to make provision for districts where this will be the result, by prescribing a method of apportionment which, by disregarding the value of the land and assessing merely the value of the benefit, will in such cases operate more justly, perhaps, than a rule which lays the tax simply according to the value of the land. The Laney Act prescribes such a method of apportionment, and by it the Legislature has made such provision. But can it be said to be without the Legislature's power to equally provide for the formation of districts in which presumably and as a fact there will not be this disproportion of benefit, but where it will be distributed throughout the district with relative equality; and prescribe therefor a rule which, in laying the tax according to the value of the property affected, will in such cases just as fairly tax the property only in proportion to the benefit? That is the question here. It seems to us that there can be but one answer. The Legislature clearly had the power.

That the Canales Act permits the taxation of other than real property within a levee district for the purpose of the improvement, presents no constitutional objection. It can not be said that personal property situated within such a district does not derive a certain benefit from the improvement. It, with real property, is equally subject to damage from overflow, and with perfect justness may be taxed for such an improvement. Gibson v. Board of Commissioners, 128 Ind., 65.

The Laney Act did not by implication repeal the Canales Act, though it was a later Act of the same session of the Legislature. As clearly indicated by its caption, the intention of the Canales Act, in the main, was to provide an Act whereby certain districts formed under the authority of section 52, article 3, of the Constitution, might become conservation and reclamation districts under its authority and thereby avail themselves of the larger taxing power conferred by section 59 of article 16. The Laney Act deals, it is true, with the same general subject, but it is clear that its principal purpose was to make provision for the creation of original districts with such ampler powers. It declares in one section that levee districts organized under other laws may avail themselves of its privileges and the taxing authority conferred by section 59 of article 16 by following a procedure which in some degree differs from that prescribed by the Canales Act with respect to levee districts becoming conservation and reclamation districts. In an independent section it declares that it shall not be construed as repealing any law upon its subject passed at that session, but that any such law shall be deemed cumulative of it. Implied repeals are never favored. In view of this explicit declaration it can not be held that the Laney Act impliedly repealed the Canales Act.

The bond issue in question is entitled to receive the Attorney General's approval, and the writ of mandamus prayed for is accordingly allowed.