## THOMAS v. DALLAS COUNTY LEVEE IMPROVEMENT DIST. NO. 6. (No. 3531.)

Court of Civil Appeals of Texas. Texarkana. May 3, 1928.

Rehearing Denied June 7, 1928.

1. **Taxation** ⬅589—General law of limitation applies to suits for delinquent taxes by district or county attorneys, with which assessors and collectors have nothing to do.

General law of limitation applies to suits for delinquent taxes filed by district or county attorneys, proceedings with which assessors and collectors have nothing to do.

2. **Levees and flood control** ⬅27—Two-year limitation held inapplicable in suit for delinquent taxes brought by district organized under Laney Act (Acts 35th Leg. 4th Called Sess. [1918] c. 44; Rev. St. 1925, art. 7298).

Two-year statute of limitations does not apply in suit by district formed under provisions of Laney Act, Acts 35th Leg. 4th Called Sess. (1918) c. 44, for delinquent taxes, since, under Constitution as amended 1917, reclamation district is municipal corporation and governmental agency; hence within provisions of Rev. St. 1925, art. 7298, providing taxpayer may not plead any statute of limitations by way of defense against payment of any taxes due to state, county, city, or town.

3. **Levees and flood control** ⬅27—Landowner could not complain that appraisement of benefits was irregular because location of portion of levee was changed thereafter without showing lessening of benefits to him (Laney Act).

In suit brought by district organized under Laney Act (Acts 35th Leg. 4th Called Sess. [1918] c. 44), for delinquent taxes assessed against benefited tract of land, landowner could not complain of change in location of portion of levee in vicinity of land after benefits had been assessed without showing lessening of

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

benefits assessed against his property, since, if change was unauthorized or irregular, he might have prevented its consummation by appropriate legal proceedings instituted at proper time.

**4. Levees and flood control ⬳34—Reappraisement of benefits held unnecessary to second bond issue for completion of work to render taxes valid (Laney Act, § 55).**

In suit for delinquent taxes brought by district organized under Laney Act (Acts 35th Leg. 4th Called Sess. [1918] c. 44), where, after bonds had been issued for improvement, second bond issue was authorized without reappraisement of benefits to land in district as basis for additional tax which additional indebtedness was for completing original plan, making repairs, and some additional drainage ditches essential to reclamation, *held* that, under section 55 authorizing creation of additional indebtedness, reappraisement of benefits was unnecessary.

**5. Levees and flood control ⬳27—Showing ditches to be constructed were not in immediate vicinity did not authorize inference land was not benefited (Laney Act).**

In suit brought by district organized under Laney Act, Acts 35th Leg. 4th Called Sess. (1918) c. 44, to collect delinquent taxes, where second bond issue had been made in order to complete work, showing that ditches for which second bond issue was made were not in vicinity of land assessed, did not authorize inference that land would not be benefited to some extent by additional drainage, since it is not to be expected that every property owner will be specially benefited by every part of reclamation plan adopted, but benefits and burdens are adjusted according to scheme as an entirety.

**6. Levees and flood control ⬳27—In suit by district for delinquent taxes, taxpayer could not complain of inadequacy of remedy afforded, where he voluntarily invoked benefits of statute (Laney Act, § 56).**

In suit brought by district organized under Laney Act, Acts 35th Leg. 4th Called Sess. (1918) c. 44, for delinquent taxes, taxpayer could not complain of inadequacy of remedy afforded by section 56, providing for reappraisement of benefits when inequality should arise by reason of changing conditions, since he voluntarily invoked benefits of statute which contained provision for adjusting inequalities as they arose.

**7. Levees and flood control ⬳27—Taxpayer could not complain that land was not sufficiently described in assessment, in absence of showing no valid levy had been made, where delinquent record was introduced in evidence (Laney Act).**

In suit brought by district organized under Laney Act, Acts 35th Leg. 4th Called Sess. (1918) c. 44, for delinquent taxes, taxpayer could not complain that land was not sufficiently described in assessment, where he did not show that no valid levy had been made, since under statute delinquent tax record introduced in evidence constituted prima facie proof of regularity of all pre-existing proceedings essential to levy of tax.

**On Motion for Rehearing.**

**8. Appeal and error ⬳692(1)—Ruling on question could not be considered on appeal, in absence of showing in bill what answer to question would have been.**

Where objection was sustained to question on ground that answer would be immaterial, and bill failed to show what answer to question would have been, *held* that ruling could not be considered on appeal.

**9. Levees and flood control ⬳34—In district's suit for delinquent tax, bonds for payment of which tax was levied must be treated as valid outstanding obligations (Laney Act).**

In suit brought by district organized under Laney Act, Acts 35th Leg. 4th Called Sess. (1918) c. 44, for collection of delinquent taxes, bonds for payment of which tax was levied must be treated as valid outstanding obligations for which district had right to levy and collect a tax sufficient for payment.

Appeal from District Court, Dallas County; Claude McCallum, Judge.

Suits by the Dallas County Levee Improvement District No. 6 against H. Bascom Thomas, consolidated and tried as one. From a judgment for the plaintiff, the defendant appeals. Affirmed.

H. Bascom Thomas, Jr., of Dallas, for appellant.

K. R. Craig, H. B. Sanders, and Geo. A. Titterington, all of Dallas, for appellee.

HODGES, J. The Dallas county levee improvement district No. 6 was organized in January, 1919, under what is known as the Laney Act (Acts 35th Leg. 4th Called Sess., c. 44). It included lands in the counties of Dallas, Rockwall, and Kaufman lying in the swamps of the East fork of Trinity river. The appellant owned a tract of 50 acres situated in the district, and was among those who signed the original petition asking for its creation. This appeal is from a judgment against him for district taxes due for the years 1921, 1922, 1923, and 1924. Two suits were filed against him; the first was for the taxes due for the years 1921 and 1922, and the second for the taxes due for 1923 and 1924. The two suits were consolidated and tried as one in the court below. At the conclusion of the evidence, the trial court directed a verdict in favor of the district for the amount of the taxes claimed.

Among other defenses, appellant pleaded the statute of limitation of two years. It is conceded in this appeal that the right to collect the district taxes for the years 1921 and 1922 is barred, unless the districts organized under the Laney Act are excepted from the provisions of the general law of limitation. In Rutledge v. State, 292 S. W. 164, the Commission of Appeals held that suits filed by improvement districts organized under the Can-

ales Act (Acts 34th Leg. c. 146) for the collection of delinquent taxes were subject to that general law. The ruling was based upon the conclusion that the statute authorizing the creation of such districts did not contain any exception. A motion for a rehearing in that case is still pending at this time. However, we are of the opinion that, if the holding in the Rutledge Case is adhered to, that decision would not apply to districts organized under the Laney Act. The two acts were passed at different times, and one does not supplant the other. Dallas County Levee District No. 2 v. Looney, 109 Tex. 326, 207 S. W. 310.

The provision of the Canales Act relied on as excepting improvement districts from the general laws of limitation are as follows:

"Sec. 34. It shall be the duty of the tax collector to make a certified list of all delinquent property upon which the improvement taxes have not been paid, and return the same to the county commissioners' court, and the said court shall proceed to have said taxes collected by sale by the collector, or by suit, in the same manner as now provided for the collection of delinquent state and county taxes. * * *"

"Sec. 36. All taxes levied or authorized to be levied by this act shall be payable and shall mature and become delinquent as is provided by the laws of this state, for state and county taxes, and upon the failure to pay such taxes when due, the same penalties shall accrue and be collected as are provided by the laws of the state of Texas for the nonpayment of state and county taxes. All taxes shall be a lien upon the property against which such taxes are assessed. In the assessment and collection of the taxes levied or authorized to be levied by this act, the assessor and collector of taxes shall, respectively, have the same powers and shall be governed by the same rules and regulations as are provided by the laws of the state of Texas for the assessment and collection of state and county taxes, unless herein otherwise provided."

Article 7298 of the Revised Civil Statutes of 1925 contains the following provision:

"No delinquent taxpayer shall have the right to plead in any court or in any manner rely upon any statute of limitation by way of defense against the payment of any taxes due from him or her either to the state, or any county, city or town."

That provision was enacted in 1895. It appears in the revision of 1911 as article 7662, and as a part of chapter 13 of the General Law (Rev. St. 1911, tit. 126) regulating the collection of delinquent taxes due the state and counties. Section 42 of the Laney Act is as follows:

"Tax collectors of levee improvement districts shall perform all duties and exercise all powers in respect to delinquent taxes due levee improvement districts as may be provided by law for the collection of delinquent state and county taxes, and the collection of such delinquent levee improvement district taxes and sales of property therefor shall be governed by

7 S.W.(2d)—41

the laws applying to the collection of delinquent state and county taxes. Taxes levied under this act shall be a lien upon the property against which they are assessed, and shall be payable and shall mature and become delinquent as may be provided by law for state and county taxes, and, upon failure to pay such taxes when due the same penalty shall accrue and be collected as may be provided by law in case of nonpayment of state and county taxes."

[1] It will be observed that in the Canales Act the general law relating to the collection of delinquent taxes is referred to as defining the powers and duties of *assessors* and *collectors* of improvement district taxes, while in the Laney Act those provisions are referred to as *governing* the *proceedings* in the collection of delinquent taxes. The distinction is important, when we consider the different methods of collecting delinquent taxes prescribed by law, and the distribution of the relevant duties. The general law of limitation applies to suits filed by the district or county attorneys, proceedings with which the assessors and collectors have nothing to do.

It is apparent from the emergency clause attached to the act of 1895, quoted above, that the exception in favor of counties, cities, and towns, when suing for delinquent taxes, was made to relieve them from the necessity of filing a multiplicity of suits for the collection of their revenues.

[2] When we consider the character of the reclamation districts formed under the provisions of the Laney Act, and the important governmental functions which they may exercise, it would appear that the same reasons exist for exempting those governmental agencies from the limitation which embarrassed other municipal corporations in the collection of their revenues. Under the Constitution as amended in 1917, reclamation districts become municipal corporations and governmental agencies. It is difficult to see why they should not be given an advantage equal to other municipal corporations in the collection of the taxes necessary for their continued existence and the proper exercise of their powers. In view of those conditions, we think the courts should be liberal in construing the reference to the general law regulating the proceedings for the collection of delinquent taxes. We therefore conclude that the general law of limitation is no defense to this suit.

[3] The validity of the taxes here sued for is assailed upon the ground that they are based upon an irregular appraisement of the benefits assessed against the appellant's land. The statute provides that after the organization of the district three district supervisors shall be appointed, who in turn shall appoint three commissioners of appraisement to assess the benefits that will accrue to each tract of land situated in the district from the proposed improvements. The statute directs that this appraisement shall be made after the district engineer has made a survey of the

proposed district, formulated and reported a plan of reclamation and the approval of that plan by the state reclamation engineer. It is insisted in this appeal that the evidence shows an appraisement made before the plan of reclamation was approved by the state reclamation engineer. We do not think the facts warrant that conclusion. The evidence shows that before the commissioners of appraisement were appointed a plan of reclamation had been reported by the district engineer and approved by the state reclamation engineer. That plan was accompanied by a map which indicated the approximate location of the levees to be constructed. It was upon that plan that the benefits were appraised by the commissioners. There is some evidence tending to show that, after that plan had been reported and approved, a change was made in the location of a portion of the levee in the vicinity of the appellant's land. But there is nothing in the evidence to indicate how that change affected appellant's property. No injury had been shown by him, nor is there any evidence that he made any objection to the change when proposed. If the plan of reclamation had been legally adopted and approved at the time the benefits were assessed by the commissioners a subsequent modification of that plan by the engineers would not vitiate a previous valid appraisement. We do not think the appellant can complain of the change without showing a lessening of the benefits assessed against his property. If the change was unauthorized or irregular, he might have prevented its consummation by an appropriate legal proceeding instituted at the proper time.

The record shows that the cost of making the improvements was originally estimated at $220,000. The final report of the appraisers was filed on October .8, 1919, in which the total benefits were assessed at $369,930. Within a few days after that report was made, a petition asking for a bond election was presented by the appellant and twenty-three other property owners. The election was ordered and held, and resulted in authorizing a bond issue of $220,000. The proceeds of the sale of those bonds supplied the funds with which the proposed improvements were made. There is nothing in the evidence tending to show that the appellant made any objection to the regularity of any of the proceedings prior to the institution of these suits.

[4-6] In January, 1921, a petition was presented by a number of property owners interested in the district improvements asking for a second bond issue of $70,000. The petition stated that more funds were needed to complete the plan of reclamation, make repairs, and construct additional ditches for the adequate drainage of the lands in the district. An election was ordered which resulted in authorizing the additional bond issue. Subsequently a tax sufficient to create an interest and sinking fund for the retirement of those bonds was levied. Appellant now contends that the last-mentioned tax was illegal and void because no reappraisement of the benefits to the lands in the district had been made as a basis for this additional tax.

Sections 55 and 56 of the Laney Act are as follows:

"Sec. 55. If it should develop that the works and improvements set out in any plan of reclamation adopted by or on behalf of a levee improvement district are found insufficient to reclaim in whole or in part any or all of the lands and other property within the district, or if extensive repairs or additions to such works are deemed necessary, then in respect thereto the board of supervisors of the district, upon petition of the owners of a majority of the acreage of the district, may proceed in all respects to provide additional funds for such additional works, in accordance with the provisions of this act, in respect to the original plan of reclamation, and may, under like limitations, create additional indebtedness or issue additional bonds, but always subject to every limitation in respect to such original proceedings, as well as the approval of the new or amended plan of reclamation by the state reclamation engineer.

"Sec. 56. Whenever at any time after three years from the completion of any plan of reclamation the owners of twenty-five per cent. or more, of the acreage of the lands within any levee improvement district shall file a petition with the board of supervisors of such district, alleging that previous assessments of benefits are inequitable and praying for a readjustment of the assessment of benefits for the purpose of making a more equitable basis for the levy of taxes, the board of supervisors shall set a day for a hearing of said petition and cause notice of such hearing to be issued by the secretary of the board and to be posted in all respects as in the case of an original hearing, and at the time and place set for the hearing the board of supervisors shall proceed to hear such petition and proof for or against the same, and if it finds that there has been a material change in values of property in the district, or that for other reasons the last previous assessment of benefits is inequitable, it shall order that there be made a readjustment of the assessment of benefits for the purpose of providing a more equitable basis of taxation for all purposes within such district, and, thereupon, it shall proceed to appoint commissioners of appraisement as in the first instance which commissioners shall proceed in all respects as in the first instance, and with all the powers, rights, privileges and duties, both to the commissioners and persons interested, and such commissioners shall finally make their findings and enter their judgment and decree in the matter, which thereafter shall be the basis of the assessment of taxes within and for the district."

We do not construe section 55 as requiring a reappraisement of benefits to authorize the creation of the additional indebtedness there provided for. According to the application for the second bond election, and the various official orders that followed, the additional indebtedness was to raise funds for com-

pleting the original plan of reclamation, for making repairs, and for some additional drainage ditches essential to the reclamation of the lands situated in the district. How much of that second bond issue was to be used in completing the original plan, or in repairs, or in constructing additional ditches, is not shown. The record before us does not contain sufficient evidence to warrant the conclusion that appellant's land will be burdened by this additional tax beyond its fair proportion of the benefits which may result from the improvements contemplated. It is true a map was introduced in evidence showing that the ditches proposed were not located in the immediate vicinity of his land. But that fact alone does not authorize the inference that his land will not be benefited to some extent by the additional drainage. It is not to be expected that every property owner will be specially benefited by every part of the reclamation plan adopted. His benefits and burdens are adjusted according to the scheme as an entirety. Certainly it cannot be contended that a reappraisement is required in order to raise funds sufficient to complete the original plan of reclamation, or to repair defects which were necessary to maintain that plan. The evidence shows that the aggregate benefits originally assessed are in excess of the aggregate amount of both bond issues. Section 56 of the statute above quoted provides for a reappraisement of the benefits when inequalities arise in the future by reason of changing conditions. Appellant cannot now complain of the inadequacy of that remedy, since he voluntarily invoked the benefits of the statute which contained that provision for adjusting inequalities as they arise.

It is also contended that no annual tax was levied, as required by law, subsequent to the year 1920, and for that reason the taxes claimed in this suit were illegal. We think it is a sufficient answer to that proposition to say that the evidence does not sustain that complaint.

[7] There is no merit in the contention that the appellant's land was not sufficiently described in the assessment. Under the statute, the delinquent tax record, when introduced in evidence, constitutes prima facie proof of the regularity of all pre-existing proceedings essential to the levy of a tax against the appellant's property. When that was done, it developed upon the appellant to show that no valid levy had been made. In this he failed. He also failed to prove that the benefits to accrue to his property by the construction of the levee in the manner finally completed, together with the additional drainage, did not correspondingly benefit his property. So far as the record shows, no proof was offered by him to show absence of those benefits.

The judgment will be affirmed.

## On Motion for Rehearing.

[8] Appellant complains that the trial court erred in sustaining an objection to portions of the testimony of B. H. Williams, the state reclamation engineer. It is argued that, had this testimony been admitted, it would have shown that appellant suffered an injury from the change made in the original plan of reclamation. An examination of the bill of exception upon which that assignment is based shows that the following question was asked the reclamation engineer:

"Everything being equal with reference to the physical characteristics of the land, would it cost any more to build a levee 67,000 feet long than it would one 58,000 feet long?"

An objection was sustained to that question upon the ground that the answer would be immaterial. The bill fails to show what the answer to the question would have been, and for that reason the ruling cannot be considered.

The record contains no bill of exception showing any objection made to the introduction of the delinquent tax list, nor is there any record of any objection made to the introduction of the report of the commissioners of appraisement showing the assessment of the benefits to be different tracts of land in the district.

The contention is renewed in the motion for rehearing that the additional tax levied to provide an interest and sinking fund for the payment of the second bond issue is invalid because there had been no reappraisement of benefits before that tax was levied. The record shows that the original bond issue of $220,000 was based upon the first estimate made by the engineer of the cost of constructing the improvements contemplated in the formation of the district. That amount proved to be insufficient. A second bond issue of $70,000 was later applied for by the property owners. In the petition for the second bond issue it is stated:

"That there is not sufficient funds on hand to make the improvements, above set out, and finish the construction of a levee system now being built in said district.

"That there is a pressing necessity for the further issuance of bonds by said Dallas county levee improvement district No. 6, in that the slews, creeks, and many branches running into said district from the foothills occasion the demand for extensive ditching, digging of canals and laterals for the protection of the lands within said district, and the completion of the system of levees also designed.

"That there is not sufficient funds on hand to complete the plan of reclamation and the system of levees as they are now designed, and that the additional improvements, as above set out, and the completion of the present system of levees, can be completed with the funds accruing from the proposed additional bonds."

The petition was presented to the commissioners' court on January 20, 1921, and February 10 following was designated as the time for hearing objections from the property owners in the district. After legal notice had been given, the court met and entered an order for the election. In that order appears the following recital:

"It further appearing to the court that the works and improvements set out in the original plan of reclamation are found to be insufficient to reclaim all of the land and other property within the district, and that the amount of additional bonds to be issued does not exceed the 'estimated cost of construction," etc.

[9] In the election that followed, all of the votes cast were in favor of the bond issue, according to the recital contained in the order of the commissioners' court. It thus appears that all the provisions of the statute essential to the creation of additional indebtedness had been complied with. If those bonds are valid' outstanding obligations—and in this collateral proceeding we must treat them as such—the district had a right to levy and collect a tax sufficient for their payment. The only question before us is, Was the appellant's land subject to that tax? Under both the Constitution and the statute the district was a municipal corporation, endowed with certain governmental powers, and created for the purpose of performing certain governmental services, aside from increasing the productivity of the lands situated in the district. Necessarily the rate of taxation for district purposes must be equal and uniform. In appraising the benefits for the purpose of fixing the basis of taxation, the system of improvements relied on to produce the benefits must be regarded as a whole. In organizing the district, the landowners joined in a common enterprise in which each was to pay a part of the total cost of accomplishing the common object. It could not be expected that each would share equally in the immediate benefits of every detail. If the new work, the drainage ditches, had been specifically incorporated in the original plan of reclamation, their construction would not have lessened the benefits to the appellant's land or changed his basis of taxation. Evidently the failure to so incorporate and construct them was an error and resulted in failing to give other landowners the protection which they had a right to claim from the general enterprise. The correction of that error appears to have been in part the purpose of the additional bond issue. When the second bond issue is added to the first, the total is still below the aggregate benefits fixed by the board of appraisers. Section 55 of the Laney Act refers to what shall be done in creating additional indebtedness. It has no reference to fixing the basis of taxation. The cases to which counsel for appellant refers were decided upon a different state of facts,

and were controlled by different laws from those prevailing in this state.

As pointed out in the motion for rehearing, there was an error in the original opinion in stating that the record did not show how much of the additional bond issue was to be used in constructing new work. The statement of facts contains the estimate of the engineer showing the length and cost of the ditches which constitute the new work. That estimate is considerably less than half of the proposed bond issue. But a correction of that error does not require a different disposition of the case.

The motion is overruled.