### TRIMMIER et al. v. CARLTON et al.*
### (No. 6784.)

(Court of Civil Appeals of Texas. Austin. March 26, 1924. Rehearing Denied May 7, 1924.)

**1. Drains &approx;14(3)—Changing character of suit from election contest to suit to test validity of organization of district held without harm to defendants.**

Since district court had original jurisdiction of both an election contest and suit to enjoin organization of reclamation district, and it was within plaintiffs' power to dismiss election contest and bring suit for injunction, where all parties to injunction were in court, and defendants urged no objection to such proceeding, no harm resulted from change of election contest to suit to test validity of organization of district.

**2. Elections &approx;275—Jurisdiction in contests limited to matters showing election not properly ordered or fairly conducted.**

Jurisdiction in election contests is limited to matters showing that election was not properly ordered or fairly conducted, such as failure to give notice of time and place or that illegal votes were cast, or matters that impeach fairness of result.

**3. Drains &approx;14(3)—Quo warranto &approx;5—That requisite number of property owners signed petition for reclamation district questioned only by state in quo warranto.**

That requisite number of property owners signed petition for conservation and reclamation district, under Vernon's Ann. Civ. St. Supp. 1918, art. 5107—80, could only be questioned in quo warranto proceeding by the state.

**4. Municipal corporations &approx;18—Validity of creation and acts of de facto corporations questioned only by state.**

The rule that the validity of creation and acts of de facto corporations can be questioned only by the state is based upon acquiescence, a species of estoppel, and public policy.

**5. Municipal corporations &approx;18—Generally state alone can question validity of formation of public corporations.**

When questions touching validity of formation of public corporations merely extend to regularity of procedure followed or correctness of rulings of board or body on preliminary matters, generally state alone has right to raise question.

**6. Municipal corporations &approx;18—Rule that state alone can question validity of formation does not preclude taxpayer's suit to prevent imposition of illegal burdens.**

General rule that state alone can question validity of formation of public corporations does not preclude taxpayer's suit to prevent officers of corporation, without legal existence, from imposing burdens on property or prevent imposition of burdens where no legal power to impose them exists, even though corporation was legally organized.

**7. Drains &approx;14(3)—Statute held not to inhibit property holder from enjoining formation of district not created under statute.**

Vernon's Ann. Civ. St. Supp. 1918, art. 5107—60, providing that no suit to contest or enjoin validity of formation of any district created under the act, or bonds issued thereunder, shall be permitted except by state, *held* not to inhibit suit by property owner to enjoin formation of district created not under the act, but through board of commissioners on which act confers no jurisdiction or suit to enjoin formation by vote and by electors which act does not authorize, or suit to enjoin issuance of preliminary notes.

**8. Constitutional law &approx;48—Legislature not presumed to have ignored Constitution in passage of laws; laws construed if possible, as within legislative grant.**

The Legislature will not be presumed to have ignored constitutional limitations in passage of laws; and, where laws may be reasonably interpreted as being within legislative grant, they should be so construed and upheld.

**9. Statutes &approx;174, 175—Statutes declaratory of existing law construed in harmony with it.**

Statutes declaratory of existing law should be so construed, where doubt as to their meaning arises and different interpretation would be out of harmony with spirit and general policy of the law, as declared by Constitution or Bill of Rights.

**10. Drains &approx;14(3)—Water district, attempted to be created by board of water commissioners, and on majority vote and by eliminating municipalities voting thereon, held void.**

Since section 80 of Water Improvement Act 1917 (Vernon's Ann. Civ. St. Supp. 1918, arts. 5107—1, 5107—117), as amended in 1921, cannot be read into Canales Act (Vernon's Ann. Civ. St. Supp. 1922 arts. 5107—267 to 5107—276), putting into effect Const. Amend. 1904, art. 4, § 52, and providing that conservation and reclamation districts may be created and organized in any manner that water improvement districts are "now" authorized, conservation and reclamation district, attempted to be created through board of water engineers and on majority rather than two-thirds vote of property holders, and by eliminating municipalities included in the district and voting on its creation, was illegal and void.

**11. Drains &approx;18—Directors of reclamation district unauthorized to issue notes for preliminary expense of organization.**

Vernon's Ann. Civ. St. Supp. 1918, arts 5107—1, 5107—117, providing method whereby

---

&approx;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error granted October 29, 1924.

directors of conservation and reclamation district may issue bonds for preliminary expense or organization, is exclusive, and must be followed to bind district, and hence preliminary notes were unauthorized.

### On Motion for Rehearing.

**12. Statutes ⬠184—Purpose of legislation and general policy of law not resorted to where legislative intent admits of no substantial doubt.**

Purpose of legislation and general policy of law afford means for discovery of legislative intent, where language of statute is of doubtful, uncertain, or ambiguous purport, but such expedient cannot be resorted to where intent, admits of no substantial doubt.

Appeal from District Court, Runnels County; J. P. Woodward, Judge.

Action by J. B. Carlton and others against Paul Trimmier, Canvassing Board, and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

A. K. Doss, of Ballinger, and Gaines & Gaines, of San Antonio, for appellants.

Carden, Starling, Carden, Hemphill & Wallace, and W. M. Taylor, all of Dallas, and O. L. Parish, of Ballinger, for appellees.

McCLENDON, C. J. On July 9, 1923, J. L. Scott and 292 others filed with the board of water engineers a petition to determine the advisability of creating a conservation and reclamation district out of territory taken from the counties of Coke, Runnels, and Tom Green, under Vernon's Ann. Civ. St. Supp. 1918, art. 5107—80. The board of water engineers upon hearing the petition eliminated a part of the territory embraced in the petition, and included in the proposed district additional territory; determined that the project was feasible as applied to the boundaries as so changed; certified their findings to the commissioners' courts of the counties whose territory was involved; and directed those courts to call an election within the territory taken from their respective counties to determine whether the district should be created, and notes issued to pay the preliminary expenses, and to elect five directors of the district. The boundaries of the district included the towns of Ballinger and Miles in Runnels county, and Bronte in Coke county. The election was ordered and had, and the returns from the several counties were certified by the respective commissioners' courts to appellant Paul Trimmier, the county judge of Runnels county, as canvassing board for the district. These returns showed on their face that a majority of all the votes cast was against the creation of the district and issuance of notes. The returns from Ballinger showed a large majority against both propositions, and the returns from Bronte and Miles showed majorities in favor of each proposition. By eliminating Ballinger only from the district a small majority favored both propositions. By eliminating the vote in Ballinger, Miles, and Bronte both propositions lost by a small majority. The canvassing board, upon these returns, found that the propositions failed to carry in Ballinger, but that they carried by a majority vote in the balance of the district; and the board accordingly certified that the district was legally created, with boundaries as fixed by the board of water engineers, with Ballinger eliminated from the district. This certificate was issued on August 31, 1923, and on the same day appellants Carlton, Slaughter, and Turner joined by the state of Texas, appearing by the Attorney General, instituted this suit in the district court of Runnels county, naming as sole defendant Paul Trimmier in his capacity as canvassing board. The petition alleged various grounds as constituting illegality in the method of creating the district, which will be noted hereafter, and prayed for judgment declaring the election, void, and in the alternative asked that the votes cast be recounted, and either that all of the votes cast at such election should be counted in determining the result, or that only such votes be counted as were lawfully cast by those voters residing in that part of the proposed district lying outside of the three municipalities. There was also a prayer for general relief. On the following day certificates of election as directors of the district were issued by the canvassing board to appellants W. B. Cobb, C. L. West, J. L. Scott, and H. T. Wilkins, each of whom received a majority of the votes cast outside of Ballinger; there being a tie vote between Bert Fletcher and J. B. McCutcheon for the fifth directorship. After these certificates were issued, and on the same day, appellee G. G. Odom and a number of other resident taxpayers within the district filed a petition of intervention, adopted plaintiffs' pleadings, made the four elected directors parties defendant, and sought to enjoin them from issuing notes or otherwise acting as directors. Paul Trimmier filed an answer, to which he attached copies of all the proceedings had before him, and prayed for such action as the court might deem proper in the premises. The defendant directors filed an answer in which they questioned the right of the interveners to intervene, on the ground in the main, that this was an election contest and only the state could conduct the litigation. Defendant Trimmier interposed a like objection to the intervention. These exceptions and objections were overruled. On September 19th, plaintiffs and interveners, upon leave of the court, filed an amended petition, to which the defendants objected both by demurrer and motion to strike out. In this petition the state limited its appearance in the case in the following language:

---

⬠For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"That the Attorney General of the state of Texas has joined in this suit only pro forma to enable plaintiffs to maintain their suit, in so far as same is to contest the election as to the method of determining the vote under the provisions of the statute and not to contest said election on any ground of the unconstitutionality of any statute or irregularity of the acts of the board of water engineers, and has no other or further interest herein, and does not join in prayer for injunction."

All objections and exceptions to the petition were overruled; the cause was tried on its merits on September 21, 1923, and judgment was rendered, in which it was decreed that the cause of action before the court was not a contested election but a suit to test the validity of the district, to have it declared void, and to enjoin the directors from proceeding to organize the district, and from issuing and selling notes. The state was thereupon dismissed as a pro forma party to the suit. The court further decreed that the district was illegally created; that no power existed for the issuance of notes by the character of district sought to be created; and granted and perpetuated the injunctive relief prayed for.

The rulings of the trial court are properly before us upon appeal duly perfected by the defendants Trimmier and the four named directors of the district.

The several contentions urged by appellees, and sustained by the court, as grounds for the relief sought and granted may be reduced to the following propositions:

(1) That the board of water engineers was without power to determine the matters submitted to it for two reasons: First, because section 80 of chapter 87 of the Laws of 1917 delegated those matters to the commissioners' courts of the several counties out of which the district was created; that section 1 of the Canales Act required that conservation and reclamation districts be created in accordance with the laws in force at the time the Canales Act went into effect; and that the subsequent amendments to section 80 of the 1917 act were therefore not applicable in the original creation of conservation and reclamation districts; and second, because the board of water engineers is a branch of the executive department, and the powers sought to be conferred upon that board by the 1921 amendment to section 80 of the 1917 act were judicial in character, and could not be conferred upon any instrumentality of the executive department of the government.

(2) That the petition was not signed by the requisite number of property owners residing within the district.

(3) That the boundaries of the district were not described with sufficient definiteness.

(4) That under V. S. R. C. S. 1922, art. 5107—118, the vote cast by electors in the municipalities situated within the district should be entirely eliminated in determining whether or not the election carried, and, with the vote in Ballinger, Miles and Bronte eliminated, less than a majority voted in favor of the propositions submitted. In the alternative it was urged that the entire vote of all the municipalities, as well as other votes cast in the election, should be counted, in which event, by adding the vote cast in Ballinger, the election failed to carry. These particular issues raise questions of law presented upon the face of the returns as certified by the several commissioners' courts to the canvassing board.

(5) That no power is granted for the issuance of preliminary notes to the directors in a district created under section 80 of chapter 87 of the 1917 water improvement district act, or any of the amendments thereto.

In addition to controverting each of the several propositions urged by appellees appellants present the following contentions:

(1) That the proceeding as originally brought was an election contest which the state alone could institute and prosecute.

(2) That being an election contest its character could not be changed by plaintiffs, or in any event without the consent of defendants.

(3) That the several matters questioning the validity of the district and the powers of the directors could not constitute the basis of a suit at the instance of a taxpayer, but could only be litigated by the state in a quo warranto proceeding.

(4) That under the express provisions of section 60 of article 5107, which reads:

"No suit shall be permitted to be brought in any court of this state contesting or enjoining the validity of the formation of any district created under the provisions of this Act, or any bonds issued hereunder * * * except in the name of the state of Texas, by the Attorney General, upon his own motion, or upon the motion of any party affected thereby upon good cause shown, except as herein provided."

Only the Attorney General could raise the questions urged by the plaintiffs, and, since the Attorney General had expressly limited his appearance to matters involving only the procedure adopted by the canvassing board in counting the vote, the court was without power to grant the relief sought.

[1] Considering the first and second propositions urged by appellants to the effect that the suit was an election contest, and could not afterwards be changed into an injunction suit to test the validity of the district or the power of the directors to issue preliminary notes, we have reached the conclusion that these propositions should be overruled.

[2] Jurisdiction in election contests is limited to such matters as tend to show that the election "was not properly ordered or fairly conducted, such as the failure to give notice of the time and place where the elec-

tion is to be held or that illegal votes were cast thereat, or some other matter that would impeach the fairness of the result." Bassel v. Shanklin (Tex. Civ. App.) 183 S. W. 105; McCall v. Lewis, 263 S. W. 325.

That the district was attempted to be created through the instrumentality of a board with no jurisdiction to act in the matter, that to create the district required a two-thirds vote of the electors in the entire territory embraced within the district, and not a bare majority in a part of that territory, and that the directors had no power to issue preliminary notes, were clearly not issues which could be litigated in an election contest.

[3] That a requisite number of property owners signed the petition could only be questioned in a quo warranto proceeding, instituted by the state. Drainage District v. Higbee (Tex. Civ. App.) 149 S. W. 381; Wilmarth v. Reagan (Tex. Com. App.) 242 S. W. 726.

The only issue presented by appellees, which might be construed as having any bearing upon the fairness of the election, is whether the boundaries of the district were defined with sufficient definiteness to apprize the electors that they were entitled to vote in the election.

When the trial court decreed that the proceeding was not an election contest and dismissed the state as a party, the election contest, whatever that may have been, was eliminated from the case, in so far as the court had power to do so. The state has not appealed from the order of dismissal, and certainly the appellants have no ground of complaint at that order.

The only question remaining in this regard is whether or not, assuming that the proceeding as originally filed was an election contest, the plaintiffs had the power to change it into an injunction suit. It is urged by appellants that no such power exists, that once a proceeding assumes the form of an election contest it remains so throughout, and cannot be changed by the plaintiffs to the action into any other character of proceeding. If this proposition be correct, then we think, since the action of the trial court in dismissing the state and the acquiescence therein by the plaintiffs constituted an abandonment of the action in so far as it constituted an election contest, the whole proceeding should thereupon have been dismissed.

We are not impressed, however, with the soundness of appellants' contention that the nature of the proceeding could not be changed. The district court had original jurisdiction to entertain both an election contest and a suit for injunction; that is, it had original jurisdiction over the subject-matter of either character of proceeding. Certainly it was within the power of the plaintiffs at any time to dismiss the election contest and bring an original suit for injunction. What

they have done in the present instance, we think, is tantamount to such action; the only difference being that the whole case was not formally dismissed and the pleadings refiled under another docket number as an injunction suit. No useful purpose could be served by requiring this to be done. A holding that it was essential would necessarily have to be rested upon highly technical grounds, which would not be in accord with the spirit of our liberal system of procedure, which looks to the substance rather than to mere form. All of the parties were in court. The matters sought to be adjudicated were extremely important, and all parties seemed to be anxious to have them speedily determined. The appellants did not claim surprise or ask for a continuance in order to prepare their defense to the several matters urged by the plaintiffs; no prejudice is shown by proceeding under the pleadings as filed; and no advantage is suggested which could accrue to appellants by formal dismissal and refiling the suit. There is an essential difference between changing the nature of a proceeding in a court of original jurisdiction and in an attempt to change the nature of a proceeding after it has reached a court having jurisdiction only by appeal, as is illustrated in the case of appeals to the district court in probate matters and in civil suits originating in the justice and county courts. Here the court had jurisdiction to entertain either character of proceeding originally, and, where no harm could result from changing the nature of the proceeding, we see no reason why it should not be allowed.

We hold, therefore, that in so far as this may have originally been an election contest, it has been dismissed, and those issues cognizable only in that character of proceeding eliminated from the case.

Appellants' second and third contentions, above, bear such relation to each other that we will consider them together.

[4] The rules of law which govern corporations which by user have acquired a de facto existence need not be considered, since the corporation, in the present instance, had barely begun to function, and clearly had not yet become a de facto organization, if it was not such de jure. The grounds upon which are based the holdings that the validity of the creation and acts of de facto corporations cannot be questioned except by the state are rested upon acquiescence, a species of estoppel, and a sound public policy.

"The interests of the public which depend upon such municipalities, the rights and relations of private citizens which become vested and fixed in reliance upon their existence, and the intolerable injustice and confusion which must result from an ex post facto avoidance of their acts, require that when a municipal body has assumed under color of authority, and exercised for any considerable period of time, with the consent of the state, the powers of a public corporation, of a kind recognized by the organic

law, that its acts and contracts shall be regarded as valid and effectual and binding upon the municipality." 1 Dillon, Mun. Corp. (5th Ed.) vol. 1, par. 67, p. 122.

Upon this principle decisions in the following cases are rested: El Paso v. Ruckman, 92 Tex. 86, 46 S. W. 25; Graham v. Greenville, 67 Tex. 62, 2 S. W. 742; Brennan v. Bradshaw, 53 Tex. 337, 37 Am. Rep. 758.

[5] When the questions touching the validity of the formation of a public corporation merely extend to the regularity of the procedure which has been followed or the correctness of the rulings of some board or other body vested with the authority to determine preliminary matters, it is generally held that the state alone has the right to raise such question. Crabb v. School Dist., 105 Tex. 194, 146 S. W. 528; Ann. Cas. 1915B, 1146; Drainage District v. Higbee, above.

[6] This rule, however, has never been extended so as to preclude a taxpayer from resorting to the courts to prevent the officers of a corporation which has no legal existence from imposing burdens upon his property, or to prevent the imposition of such burdens where the legal power to impose them does not exist, even though the corporation were legally created.

The case of Parks v. West, 102 Tex. 11, 111 S. W. 726, is decisive of this question, and, in very concise language, which we quote, lays down the rule which should be followed in this state:

"But it is urged that the attack of plaintiffs is upon the corporate existence of the Mertens school district in a collateral proceeding, and that the validity of such incorporation can be questioned only by the state in a direct proceeding. Such a proposition is often applied in favor of de facto corporations, and it is sometimes difficult to determine its exact scope and application. El Paso v. Ruckman, 92 Tex. 86; Brennan v. Bradshaw, 53 Tex. 331; Graham v. City of Greenville, 67 Tex. 62. Usually it is applied where the attack is because of some defect in organization under a law by virtue of which such a corporation could lawfully exist. Sometimes the attacking party sustains such relation to the corporation as to estop him from questioning its corporate existence, and there are other cases in which it is not essential to the protection of any right of his that inquiry should be made into the validity of the incorporation.

"The rule is founded in public policy and convenience merely, and is not to be so applied as to defeat the 'assertion of just legal rights by parties in the courts. It is said that it is essential to the doctrine that there be in existence a law in virtue of which such a corporation as that the party to the litigation claims to be might legally exist and 'that the rule is the same where there is only an unconstitutional law.' Even this qualification of the rule seems to be subject to exceptions applicable in cases where the attacking party sustains certain relations to the alleged corporation or has no right of his own to be protected by allowing

264 S.W.—17

the injury. The doctrine is discussed and authorities extensively cited by Judge Thompson in 10 Cyc. 252–260. There is no need for a close examination of the rule in this case. It may admit of serious question whether or not the Mertens independent school district had acted as a quasi corporation sufficiently to have acquired a de facto existence in the sense of the rule when this litigation began. But be that as it may, the attack of the plaintiffs is not merely upon the corporate existence of the district, but is directed against the power of the defendants to lay burdens on their property and subject them to the payment of taxes. Surely they have the right to do that, although the reason they assign for the lack of power may also go to the right of the district to exist under the Constitution. Certainly a property holder has the right to say to the court that he is protected by the Constitution from the imposition of a tax by persons to whom the Constitution, in effect, denies such power. If the rule relied on by defendants should preclude plaintiffs from making the contention now, when and in what way could they make it? So far as we can see, the rule would equally apply to an effort to resist the collection of the tax by suit or otherwise. The consequence to which the contention leads is that, while the Constitution does not permit such a school district to exist and levy taxes, it may yet do both and force property owners to pay until the officers of the state see fit to intervene. Useful and convenient as is the doctrine invoked, we cannot give our assent to an application of it which would deny to the plaintiffs the protection sought of their property rights."

In the Parks Case the act under which the district was sought to be created was held void on constitutional grounds. But we see no controlling distinction between that case and the case at bar in so far as concerns the questions which relate to the jurisdiction of the board of water engineers to act in the premises, the power of the directors to issue preliminary notes, and the character of vote required to create the district. If no jurisdiction was by statute conferred upon the board of water engineers, or if, under the enabling statute, a two-thirds vote of the electors in the entire district was required in order to create the district, then we think it follows that the district had no legal existence. Again, if no power existed in the directors to issue preliminary notes, then an attempted issue of them by the directors would be a totally void act. In either such event a taxpayer would, on principle, have the same right to protect his property from illegal burdens sought to be imposed by the directors as he would have were the enabling statute beyond the power of the Legislature to enact. "If the rule relied on by defendants should preclude plaintiffs from making the contention now, when and in what way could they make it? So far as we can see, the rule would equally apply to an effort to resist the collection of the tax by suit or otherwise." In other words, unless the Attorney General saw fit to act in the premises (and

in the present case he has refused to join in raising the questions presented), the taxpayers would be compelled to pay the taxes on their property, although the proceedings on their face showed that the district was attempted to be created by a board with no power to create it; that the election for the district failed to carry; and that the directors were without authority to issue preliminary notes.

[7, 8] This brings us to a consideration of section 60 of the act, the pertinent portions of which are quoted above. If that section, when properly construed, would deny to appellants the right to question the validity of the corporation and the powers of the directors in the respects just discussed, and thereby deny them the right to prevent burdens from being placed upon their property, then a serious question would be presented whether the section were violative of those provisions of the state and federal Constitutions which inhibit the passage of laws denying to the individual due process of law in the taking of his property. But we think it unnecessary to consider this question. The Legislature will not be presumed to have ignored constitutional limitations in the passage of laws; and, where such laws may be reasonably interpreted as being within the legislative grant, they should be so construed and upheld.

[9] Statutes are often passed which are but declaratory of existing law, and they should be so construed where substantial doubt as to their meaning arises, and a different interpretation would be out of harmony with the spirit and general policy of the law as declared in the Constitution or Bill of Rights.

The section in express language prohibits the bringing of any suit, except by the state, "contesting or enjoining the validity of the formation of any district created under the provisions of this act, or any bonds issued hereunder." We doubt if it can be said that the legislative intent appears with perfect clarity from this language. Literally and grammatically it inhibits suits contesting the validity of the formation of any district, or "enjoining the validity of the formation of any district." The Legislature probably meant "contesting the validity or enjoining the formation." Waving this matter aside as a mere grammatical inaccuracy, we pass to a consideration of the expression "of any district created under the provisions of this act." Does this language inhibit a suit to enjoin the formation of a district created, not under the provisions of the act if it vested all preliminary matters to be determined in the several commissioners courts, but through the instrumentality of a board upon which the act confers no jurisdiction in the premises? Again, does it inhibit a suit to enjoin the formation of a district by a vote and by electors which the act

does not authorize? We think both of these questions should be answered in the negative.

Furthermore, there is no inhibition expressed in the section against a suit to enjoin any illegal act of the directors, unless it be in the matter of issuing bonds. At the time this article was passed there was no authority, under any kind of district, to issue preliminary notes. We think clearly the inhibition, in so far as enjoining acts of the directors is concerned, is limited to the issue of bonds. We hold that appellees were not precluded, under any of appellants' contentions, from litigating the questions mentioned in the above discussion.

[10] Preliminary to a consideration of the questions presented which relate to the validity of the district sought to be created, and the powers of the directors to issue notes, we think it would facilitate a clear understanding of the issues thus raised to give a brief outline of the constitutional and statutory provisions which affect those questions.

In 1904, section 52 of article 3 of the Constitution of 1876 was so amended as to authorize the creation of districts for the purposes of irrigation, navigation, and drainage. This amendment, which for convenience will be referred to as the 1904 amendment, prescribed the following limitations: First, it required a two-third majority of the resident property taxpayers voting thereon to authorize a bond issue; second, the constitutional limitations with regard to taxation in municipal corporations when included in such districts could not be infringed by taxation imposed by the district; and, third, the amount of bonds issued by the district could not exceed one-fourth of the assessed valuation of real property in the district.

Under this amendment the Legislature in 1905 passed a statute authorizing the creation of irrigation districts. In 1913, the provisions of the act of 1905 were expressly repealed, and a comprehensive statute was passed for the creation of irrigation districts. Chapter 172, General Laws 33d Legislature, p. 380; Vernon's Sayles' Civil Statutes 1914, arts. 5107—1 to 5107—105.

In 1917 the Legislature passed an act providing for the creation of water improvement districts. This act no doubt was intended to supersede the 1913 act, as it covered the same general subject, and in many respects the two are identical. Chapter 87, p. 172, General Laws of the 35th Legislature; Vernon's Civ. St. Supp. 1918, arts. 5107—1 to 5107—117, included.

In the meantime the Legislature had passed statutes providing for the creation of drainage districts and of levee improvement districts under authority of the 1904 amendment; which statutes will be referred to later.

At the same session of the Legislature

which passed the water improvement act of 1917 a joint resolution submitted to the voters of the state a constitutional amendment which became section 59a of article 16, authorizing the creation of "conservation and reclamation" districts. This proposed amendment, which was passed August 21, 1917, and which will be referred to as the conservation amendment, imposed none of the restrictions or limitations contained in the 1904 amendment.

At a called session of the same Legislature, held in 1918, two acts were passed for the purpose of putting into effect the conservation amendment. These were the Canales Act (chapter 25, p. 40, 4th Called Sess., 35th Legislature; Vernon's 1922 Supplement, arts. 5107—267 to 5107—276), and the Laney Act (chapter 44, p. 97, 4th Called Sess., 35th Legislature [Vernon's Ann. Civ. St. Supp. 1922, art. 5584½ et seq.]). The Laney Act relates solely to the creation of levee improvement districts, and is not here involved.

The Canales Act has ten sections. The first provides for the original creation of conservation and reclamation districts, with the powers of water improvement, drainage, and levee improvement districts. That section has never been amended. It reads as follows:

"Conservation and reclamation districts may be created and organized in any manner that water improvement districts, drainage districts, or levee improvement districts are now authorized by the laws of this state to be created, and for the several purposes therein provided."

Section 2 of that act provides generally that water improvement, drainage, and levee improvement districts theretofore organized may accept the benefits of the conservation amendment without change of name. Sections 3 and 4 remove all limitations with regard to taxation in conservation and reclamation districts, whether originally created as such or becoming such by the prescribed method. Section 5 provides that water improvement or irrigation districts theretofore or thereafter organized may become conservation and reclamation districts by petition signed by 20 per cent. of the owners of land in the district and filed with the directors, and an election held under such petition; "such election to be conducted as provided for general elections in such districts." It may be noted in passing that the general biennial elections held in such districts are by reference governed by the general election laws. Section 6 provides that conservation and reclamation districts, whether originally so created or afterwards becoming such, "shall be governed and controlled by the provisions of chapter 57, acts of the 35th Legislature, regular session, * * * except as herein otherwise provided." Sections 7 and 9 provide respectively for a change from drainage and levee improvement districts to conservation and rec-

lamation districts; and sections 8 and 10 relate to the control of such districts whether originally created as such or becoming such by adoption.

It is evident that the reference in section 6 to chapter 57 of the 1917 laws, as well as in section 7 to chapter 36 of the 1913 laws, were clerical errors. The former should have been chapter 87 of the 1917 laws and the latter chapter 118, General Laws of 1911. It is also to be noted that, whereas sections 8 and 10, relating to the government of districts for drainage and levee purposes, respectively, provide that the drainage and levee district statutes "and amendments thereof" shall apply, section 6, relating to the government of districts with powers of water improvement districts, in referring to the water improvement laws, omits the clause, "and amendments thereof." Sections 6 and 7 of this act were amended in 1919 (chapter 12, 2d Called Sess. [Vernon's Ann. Civ. St. Supp. 1922, arts. 5107—272, 5107—273]) in the following respects: The clerical errors in sections 6 and 7 above noted were corrected, and the expression, "and amendments thereof," was added to section 6. No other sections of the Canales Act have ever been amended, except that section 5a was added in 1919, but was later repealed. That section, however, has no bearing upon the present controversy.

It will be observed that section 1 of the Canales Act, the only provision in the law for the original creation of conservation and reclamation districts, provides that such districts having the powers of water improvement districts may be created "in any manner that water improvement districts * * * are now authorized by the laws of this state to be created." The law in effect at that time providing for the creation of water improvement districts was the act of 1917 above referred to. Under that act, sections 1 to 9, inclusive, which relate to districts wholly within one county, the procedure required was by petition of a certain number of the property owners in the district to the commissioners' court. That court thereupon set the matter down for hearing, and passed upon certain preliminary matters, included among which were the determination of advisability of creating the district, and the establishment of its boundaries; the court being authorized in this latter respect to modify the boundaries as it might deem proper. When the court determined in favor of the creation of the district an election was called, in which only resident qualified voters who owned real estate within the district had the right to vote; and by section 9 of the act two-thirds of those voting at the election must vote for the district in order to create it. Section 80 of the act provided for the creation of districts out of territory embraced in more than one county. Under that section the same general procedure was required as in sections 1 to 9, except that the

commissioners' court in each of the counties was required to act. This section also required a two-thirds favorable vote by the same class of electors. Section 56, which related to bond issue elections also required a two-thirds majority of the resident taxpaying voters. This provision was, of course, necessary under the 1904 amendment. In 1919 a number of the sections of the 1917 water improvement district act were amended. Chapter 28, p. 65, General Laws, 2d Called Sess., 36th Legislature [Vernon's Ann. Civ. St. Supp. 1922, arts. 5107—1 et seq.]. Among these were the following: Sections 9 and 80 reduced the size of the majority vote in creating the two classes of districts from two-thirds to a simple majority. Section 56 was amended so as to provide that, where the bond election was held in a district created under the 1904 amendment, a two-thirds majority was required; whereas, if the election was in a district operating under the conservation amendment, a majority vote only was required. A new section was also added to the act which is now V. R. C. S. 1922, art. 5107—118, and reads:

"Whenever a district proposed to be organized as herein provided contains within its boundaries as proposed and described in the petition for organization, a town, city or municipal corporation, or part thereof, when the county commissioners' court calling the election to determine said question as herein provided shall constitute said territory within said town, city or municipal corporation, a separate election precinct, with one or more polling places, and the vote received for and against the proposition within said town city or municipal corporation shall be separately canvassed by the court to determine whether or not a majority of those voting at said election within said town, city or municipal corporation voted for or against said proposition. If a majority of those voting at said election within such town, city or municipal corporation vote against the formation of such district the same shall not be formed including such town, city or municipal corporation, but if the majority of the votes therein is in favor of the formation of such district then such votes shall be canvassed with the votes of the balance of said entire district to determine the result of said election."

At this same session of the Legislature another act was passed creating fresh water supply districts under the conservation amendment, and it is to be noted that this act prescribed the majority rule in elections both for their creation and the issuance of bonds. Acts 36th Legislature, 2d Called Sess. (1919) c. 48, §§ 10, 29 (Vernon's Ann. Civ. St. Supp. 1922, arts. 5107—189, 5107—208).

In 1921 (chapter 13, Reg. Sess. 1921 [Vernon's Ann. Civ. St. Supp. 1922, art. 5107—80]) section 80 of the 1917 water improvement act was further amended by providing that, where the district embraced territory in more than one county, the petition for the district should be filed with the board of water engineers, and the matters theretofore delegated to the commissioners' courts with reference to determining the feasibility of the project, the territory to be embraced in the district, etc., were vested in the board of water engineers.

In 1923, sections 5, 7, and 9 of chapter 87 of the 1917 laws were so amended as to provide for submission to the electorate, at the election for creation of districts under these sections, the further proposition whether the directors should be authorized to issue notes not to exceed 15 per cent. of the estimated cost of the entire irrigation project, to provide a fund to cover the cost of organizing the district and other preliminary expenses. Chapter 11, p. 25, 1st Called Sess., 38th Legislature.

From the foregoing statement it will be seen that, if the amendments to section 80 of the water improvement district act of 1917 are not applicable to conservation and reclamation districts originally created under section 1 of the Canales Act, but if, on the other hand, section 80 of the 1917 act as it was in force at the time the Canales Act was passed was by reference read into section 1 of the Canales Act, then the district under consideration was required to be created, not through the instrumentality of the board of water engineers, as provided in the 1921 amendment to section 80, but through the instrumentality of the commissioners' courts of the several counties from whose territory the district was taken. The procedure followed in the instant case was under the 1921 amendment, and through the instrumentality of the board of water engineers. It will also be seen that, if the amendment of 1919 of section 80 is not read into section 1 of the Canales Act, then a two-thirds vote as required by section 80 of the 1917 act was necessary to legally create the district.

Furthermore, under this construction of section 1 of the Canales Act, the added section of 1919, which became V. R. C. S. art. 5107—118, and the 1923 amendments to sections 5, 7, and 9 providing for the issue of preliminary notes, cannot be read into the Canales Act, since these amendments relate to the original creation of water improvement districts and not to their subsequent government. From this construction of section 1 of the Canales Act we think the following conclusions would necessarily follow:

1. The district was illegal and void for three reasons: (1) Because attempted to be created through the board of water engineers, which body had no jurisdiction in the matter. (2) Because a two-thirds vote of the electors was required under the laws of 1917. (3) Because there was no provision in the laws of 1917 for the elimination of municipalities included in the district and voting in the election for its creation, and without eliminating

Ballinger the election failed to carry even by a majority vote.

2. The directors were without power to issue preliminary notes, unless they had that power inherently in the absence of the amendment of 1923.

We have reached the conclusion that there is no escape from the proposition that amendments to chapter 87 of the Laws of 1917, subsequent to the taking effect of the Canales Act, cannot be read into section 1 of that act; but that, in order to create originally a conservation and reclamation district, the provisions of the act of 1917, in force at the time the Canales Act became effective, must govern. The language of section 1 is plain, unambiguous and not open to construction or interpretation. It expressly provides that conservation and reclamation districts, with powers of water improvement districts, may be created in any manner that water improvement districts are now authorized by the laws of this state to be created. There is nothing in the act to indicate that the Legislature did not intend exactly what this language imports—nothing more, nothing less. It is true that the act shows two palpable clerical errors, which were later corrected by amendment. It is also true that section 6, as above noted, was materially different from sections 8 and 10, in omitting the expression, "and amendments thereof," when referring to the laws that were to govern water improvement districts, and that this section was later amended. It is further true that a conservation and reclamation district may now be created, first as a water improvement district under the amendments to section 80 of the 1917 act through the instrumentality of the board of water engineers, and by a bare majority vote of the electors, and later converted into a conservation and reclamation district under section 6 of the Canales Act by a bare majority of the qualified voters resident in the district, regardless of property qualification. In other words, the same result may be obtained under the procedure adopted in the present case by first creating a water improvement district and then converting it into a conservation and reclamation district; and thus the requirements of a two-thirds vote and procedure through the commissioners' court, as provided in section 80 of the 1917 act, may be evaded. Again, it is manifest that the several acts passed in 1919 show a general policy on the part of the Thirty-Sixth Legislature to require only a majority vote in every character of election under the conservation amendment. It may be urged with much force that the Legislature did not intend to create the situation above detailed, in which one procedure and a two-thirds vote would be required in originally creating a conservation and reclamation district and another procedure and a less vote required in reaching the same result by first creating a water improvement district under the 1904 amendment, and then adopting the benefits of the conservation amendment. With equal force it may be urged in this connection that the failure of the Thirty-Sixth Legislature to amend section 1 of the Canales Act so as to conform to the amendments of chapter 87 of the Laws of 1917 was a mere oversight.

Be all this as it may, it must be borne in mind that, in the first place, the Canales Act was originally passed by the Thirty-Fifth Legislature in 1918. There is nothing in the act to indicate that the Legislature did not intend exactly what the language imports, and we can but construe section 1 of that act as incorporating the provisions of chapter 87 of the 1917 act relating to the creation of water improvement districts as then in force. It must also be borne in mind that the intention of the Thirty-Fifth Legislature when it passed the Canales Act cannot be deduced from any act passed by its successor, the Thirty-Sixth Legislature; nor can the policy followed by the latter body be considered in interpreting the acts of the former body, as to which there is no evidence of a like policy. We may concede that this construction of the several statutes results in a rather anomalous situation, and throws the law in regard to the creation of conservation and reclamation districts into some degree of confusion. But, under the well-established rules of statutory construction, we can reach no other conclusion than that already expressed, and, if we were to read into section 1 of the Canales Act the various amendments to chapter 87, Laws of 1917, passed after that act, we would do violence to every known principle of statutory construction, and be guilty in fact of an oft-repeated charge against the courts, of judicial legislation. The relief for a situation of this sort, where the law is so plain as not to warrant the courts in construing it away, is with the legislative branch, and we have no desire to encroach upon the domain of that department of the government.

The conclusion we have reached in our construction of section 1 of the Canales Act is rested upon the case of Fischer v. Simon, 95 Tex. 234, 66 S. W. 447, 882. In that case the court had for construction the statute relating to sales under deeds of trust, which provided that "notice shall be given as now required in judicial sales." By this language, says Judge Gaines, "the Legislature meant to provide that in all sales under trust deeds and the like made after the act became operative, notice should be given as required by the laws for judicial sales existing at that time, and the effect was to incorporate the law as to notice as to sales under execution in the act itself and to make such laws a part thereof." This conclusion was reached by applying the rule "that a statute speaks as of the time at which it takes effect." Quoting further from the opinion:

"The result is the same as if, instead of making the existing requirements of the law as to notice in judicial sales a part of the act by merely referring thereto, the Legislature had inserted such requirements in specific terms without such reference. If the purpose had been to make the law of notice as to sale under powers given in contract liens conform to such laws as to notice in judicial sales, as might be in effect at the time the sale was made, it seems to us that they could and would have used apt words to express such intention. If the word 'now' had been omitted, then a doubt might have arisen as to whether it was the purpose to make the then existing law as to judicial sales apply at all times, or to provide that the requirements as to judicial sales existing at the time of the sale under a power, should be observed. But it seems to us that the word 'now' removes the difficulty and leaves no room for construction as to legislative intent in that particular."

The decision in that case has never been questioned. That it forecloses the controversy at issue does not admit of doubt in our mind. We hold, therefore, that the board of water engineers was without jurisdiction to entertain a petition for the original creation of the conservation and reclamation district, with the powers of a water improvement district, or to determine any of the discretionary matters delegated to the board by the 1921 amendment of section 80 of the act of 1917; but that jurisdiction to entertain such a petition and to determine the several matters preliminary to the submission of the question to a vote of the electorate was vested in the commissioners' courts of the several counties out of which the proposed district was to be created. We also hold that in an election to create such district a two-thirds majority vote of the taxpaying resident qualified voters of the entire district is required.

[11] The only remaining issue which may be pertinent to a proper judgment in this case, under the foregoing holdings, is whether the directors, independently of the 1923 amendment, had the inherent power to issue preliminary notes. We think the principles announced in Foster v. City of Waco (Tex. Sup.) 255 S. W. 1104, are conclusive of this issue. The act of 1917 provided a method for the issuance of negotiable securities in the form of bonds. That method was, we think, exclusive, and had to be followed in the issue of negotiable securities, binding upon the district.

A number of other questions are presented by appellees, but they are rendered immaterial by the conclusions above reached, and for that reason we pretermit any discussion of them.

We find no error in the trial court's judgment warranting its reversal, and it is accordingly affirmed.

### On Motion for Rehearing.

In their motion for rehearing appellants urge that all amendments to the water improvement district act of 1917 must be held to apply to districts created under the conservation amendment as well as to those created under the 1904 amendment. Section 52, art. 3. This contention is based upon the proposition that both amendments relate to the same general subject-matter, the conservation of the state's natural resources, and that "all laws theretofore existing or thereafter adopted relating to this subject-matter must be given effect to accomplish the declared policy of the state and no one provision should be given controlling effect over another."

It is true that the two amendments relate to the same general subject-matter, and that the districts created under either have the same general objects. But the two amendments are separate and distinct, and neither is self-enacting. In Levee District v. Looney, 109 Tex. 326, 207 S. W. 310, the Supreme Court say:

"In our opinion, however, no repeal of subdivisions A and B of section 52 of article 3 resulted from the adoption of the conservation amendment. The conservation amendment is a district constitutional provision, and had an equally distinct purpose. That purpose was to authorize the creation of certain of the improvement districts dealt with by section 52 of article 3, freed from the limitation upon their taxing power imposed by that section. It was not intended to interfere with the organization of such districts as might desire to rest under that limitation. For this reason it was proposed and adopted, not in any sense as an amendment of section 52 of article 3, but as an original and independent provision. It was doubtless recognized that while in some parts of the state the needed improvement might be well accomplished within the taxing limits of section 52 of article 3, yet in others conditions were such as to render those limits inadequate for the purpose. The design, therefore, was not to supplant an existing taxing power, but to create an additional one. It was not to prevent the creation of districts of the limited authority elsewhere conferred in the Constitution, but simply to provide for the formation of districts of the ampler authority given by the amendment. There is, accordingly, no inconsistency between the amendment and section 52 of article 3, and the latter was not repealed by the former."

[12] In order to create a conservation and reclamation district an enabling legislative act was necessary. This fact was recognized by the Governor in his proclamation convening the fourth called session of the Thirty-Fifth Legislature, and by the Legislature in enacting the Canales Act at that session. The caption to that act recites its purpose to be "to make effective the provisions" of the conservation amendment. Section 1 of the act provides for the creation of districts under the amendment, and it is the only provision which the Legislature has ever enacted which authorizes the original creation of such districts. The power, there-

fore, to create a district under the conservation amendment must necessarily be referred to the provisions of section 1 of the Canales Act, and that section expressly by reference incorporates into the act the laws then in force governing the creation of water improvement districts. This proposition is too plain to require argument or discussion. If the Legislature, which body alone was vested with the power to provide for the creation of such districts, had intended, when the Canales Act was passed, that subsequent amendments to the act of 1917 should apply to section 1 of the Canales Act, it would have been a simple matter to have expressed that intention in apt language. On the contrary, the language of section 1 of the Canales Act expressly negatives such intention. It would have been equally as simple for subsequent Legislatures in amending the 1917 act to have expressed an intention to apply them to section 1 of the Canales Act. They did amend other sections of that act, but persistently left section 1, as originally passed, undisturbed. The purpose of legislation and the general policy of the law often afford means for discovering the legislative intent, where the language employed in a statute is of doubtful, uncertain or ambiguous purport. But we know of no rule which authorizes the resort to these expedients, where the Legislature has expressed its intention in language so plain as not to admit of substantial doubt.

The motion for rehearing is overruled.

Motion overruled.