MATAGORDA COUNTY DRAINAGE DIS-
TRICT NO. I et al., Appellants.

v.

The COMMISSIONERS' COURT OF MATA-
GORDA COUNTY, Texas, et al.,
Appellees.

No. 12834.

Court of Civil Appeals of Texas.

Galveston.

April 7, 1955.

Rehearing Denied May 5, 1955.

Bell, Keen & Camp and John L. Camp, Bay City, for appellants.

Eli Mayfield, Palacios, Ellis L. Clark, Rockport and Vinson, Elkins, Weems & Searls and Victor W. Bouldin, Houston, for appellees.

CODY, Justice.

This was a suit by Drainage Districts Nos. 1, 2 and 4, of Matagorda County et al., against the County Judge and the County Commissioners composing the Commissioners' Court of Matagorda County, and the Tax Assessor and Collector, Before stating the issues made by the pleadings of the parties, we think it will be enlightening to state the facts from which the litigation stemmed.

Drainage Districts Nos. 1, 2 and 4 of Matagorda County, plaintiffs below, were created respectively in 1907, 1912 and 1911 under authority of Section 52 of Article 3 of the Texas Constitution, Vernon's Ann. St., and none of them has been dissolved. Bonds aggregating more than $480,000 were voted by said Districts and the proceeds thereof were used to construct drainage improvements within said Districts which benefit the land therein and promote the health of the community. The bonds have long since been paid off. The drainage improvements of the Districts have been continuously maintained by taxes levied annually therefor by the Commissioners' Court, both before and since the bonds have been paid off. And it has been the practice generally throughout the State, it is believed, for Commissioners' Courts to levy taxes annually to maintain and preserve the drainage improvements of Drainage Districts created under Section 52, Art. 3 of the Constitution, not only when bonds are outstanding against the District, but after all bonds have been paid.

On September 29, 1954, the Attorney General of Texas, in response to a request by the County Attorney of Matagorda County for a ruling, issued an opinion to the effect that the Commissioners' Court had no authority under R.C.S. Art. 8138 to levy a tax to preserve and maintain drainage improvements of the Drainage Districts in question because said Districts had become bond-free. A copy of said opinion is appended to this opinion. At a term prior to the said ruling by the Attorney General the Commissioners' Court had levied taxes for the maintenance of the drainage improvements of said Drainage Districts. The tax rate levied for District No. 1 would realize $22,500 for 1954; that levied for District No. 2 would realize $32,000; that levied for District No. 4 would realize $13,000. Said taxes so levied were necessary for the preservation and maintenance of the drainage improvements. And, unless the drainage improvements are maintained, they will deteriorate and become useless. The majority of the Commissioners' Court felt bound to abide by the Attorney General's ruling that there was no authority under Article 8138 to levy taxes for the maintenance of the drainage improvements of aforesaid Drainage Districts, and the Court issued an order rescinding the order passed at a prior term levying taxes for 1954 for the maintenance of said drainage improvements, and ordered the Tax Collector to deduct said tax from the 1954 tax levy.

The aforesaid Drainage Districts et al. brought this suit, seeking (1) to have the order rescinding the tax levy aforesaid set aside, and (2) to obtain temporary and permanent injunctive relief against the defendants, and. (3) to obtain a declaratory judgment adjudicating the power and duty of the Commissioners' Court to levy taxes annually upon the property within said Districts for the purpose of maintaining the drainage improvements. The Commissioners and the Tax Collector defended upon the grounds set forth in the Attorney General's opinion, and upon the further ground that no elections had been held in the Districts to authorize a maintenance tax as provided for in Section 59 of Article 16 of the State Constitution, and that Section 52 of Article 3 of the State Constitution contains no provision for the levy of such a tax.

The parties submitted the case to the court upon a written agreed statement of facts (from which the facts stated above have been taken). Thereafter, the Court rendered judgment that the Commissioners' Court had no power, hence no duty, to levy annual taxes on the property within the Drainage Districts for the purpose of keeping the drainage improvements in repair, and refused to set aside the Commissioners' Court's order rescinding the 1954 tax levy, and denied the Districts all relief asked for. The court adopted the parties' agreed written statement of facts as his findings of facts, and made conclusions of law which, if correct, support the judgment rendered.

The Drainage Districts have predicated their appeal upon eight formal points, the first of which presents that the court erred in holding that because the Districts were bond-free, the Commissioners' Court was not authorized by Art. 8138 to levy taxes for maintaining and preserving their drainage improvements. We sustain the point.

■ The court below adopted the construction placed on Art. 8138 by the Attorney General and construed as words of limitation the provision of the Article which directs that the maintenance tax shall be levied at the same time taxes are levied to meet the Districts' bonded indebtedness. So far as here material, Article 8138 reads as follows:

"At the same time that taxes are levied to meet the bonded indebtedness, the Court shall cause to be assessed and collected taxes upon all property in the district, whether real, personal or otherwise, sufficient to maintain, keep in repair, and to preserve the improvements in the district, and to pay all legal, just and lawful debts, demands and obligations against such district. * * *"

The provision of the Article which fixes the *time* for levying the maintenance taxes as the same *time* for which taxes are levied to meet the bonded indebtedness is a statutory provision prescribing the *time* that public officers shall perform a specified duty. (Emphasis supplied.) Such provisions are ordinarily regarded as directory. Federal Crude Oil Co. v. Yount-Lee Oil Co., 122 Tex. 21, 52 S.W.2d 56, 61; and see Sutherland on Statutory Construction, 2nd Edition, 1117.

Appellees do not hesitate to contend that the primary purpose of the Legislature in enacting Art. 8138 and providing for the levying of maintenance taxes was to insure the holders of bonds issued by the districts against any lessening of their security, and to that end providing for the keeping up of the drainage improvements. Of course such purpose is served, but if the power of the districts to maintain the drainage improvements ceases upon the paying off of the bonded indebtedness, then we must ascribe to the Legislature the intention to have created such districts in order that they might issue and sell bonds to serve the need of money lenders for a safe and convenient means of investment. Such contention is reminiscent of that ancient contention to the effect that man was made for the Sabbath, rather than the Sabbath for man. Of course, drainage districts were empowered to issue bonds in order that from the proceeds drainage improvements could be constructed; improvements, incidentally, which should be of an enduring nature, permanently securing to the people of the districts the benefits of such construction and maintenance. That is, the improvement of land and the promotion of health. See Anderson v. Ward, Tex.Com. App., 4 S.W.2d 32, 34. Surely there is no language in Art. 8138 which would force an interpretation that, by paying for the construction of drainage improvements, the districts must lose said improvements through being forced to abandon repairing and maintaining them. Of course, the loss of the power to levy maintenance taxes would consign the drainage improvements to uselessness, making a complete loss to the district of the value thereof. We will not go through all other statutes which were enacted to implement Sec. 52 of Art. 3 of the State Constitution. These statutes begin with Article 8097. Article 8137 makes

permanent provision for the district commissioners to annually furnish the Commissioners' Court with an estimate of the probable cost of the maintenance and repairs for the ensuing year. Article 8154 provides for the drainage commissioners to keep the system in repair, and supervise and control the construction and maintenance of such improvements. Article 8177 et seq. provide for the voluntary dissolution of a drainage district organized under said statutes. The only other way which the Legislature has provided for the dissolution of a drainage district is for the abolishment thereof, as set out in Article 8193, which has no possible application here. It can only be concluded that the provisions enacted by the Legislature under which a district can be voluntarily dissolved and involuntarily abolished were sufficient in themselves to indicate that the Legislature did not contemplate that a district should be put out of business by the process of attrition which would follow the loss of the power to levy maintenance taxes conferred by Article 8138.

█ The Legislature was authorized by Sec. 52 of Art. 3 of the Constitution to confer on drainage districts power to levy maintenance taxes, as was done in Art. 8138. We will quote only one of the purposes authorized by Sec. 52 of Art. 3 of the Constitution, as amended: "(b) The construction and maintenance of pools, lakes, reservoirs, dams, canals and waterways for the purposes of irrigation, drainage or navigation, or in aid thereof." In this connection we overrule appellees' contention that Section 59 of Art. 16 of the Constitution makes Art. 8138 unconstitutional, or, at least, that it does so unless the adoption of the taxation for maintenance was adopted by the voters of the district. Section 59 (consisting of Sections 59(a), 59(b) and 59(c) was adopted in 1917, long after the amendment to Section 52 of Art. 3 was adopted and long after Art. 8138 was enacted, and after the appellant drainage districts herein were created. Said provision of the Constitution has no bearing on Sec. 52 of Art. 3 of the Constitution, or Art. 8138 enacted by the Legislature pursuant thereto. See Ogburn v. Barstow, Ward County, Tex., Drainage District, Tex.Civ.App., 230 S.W. 1036, 1038 (writ denied). The concluding portion of Sec. 59(c) of Art. 16 of the Constitution so relied upon by appellees reads: " * * provided the Legislature shall not authorize the issuance of any bonds or provide for any indebtedness against any reclamation district unless such proposition shall first be submitted to the qualified property taxpaying voters of such district and the proposition adopted."

█ What we have just said requires that we sustain the Drainage Districts' second and third points. These points attack the holding of the court (1) that Sec. 52 of Art. 3 of the Constitution precluded the districts from levying maintenance taxes, and (2) that Sec. 59 of Art. 16 of the Constitution precluded the levying of such taxes because the voters of said districts had not specifically voted for a maintenance tax.

And what we have stated above likewise requires that we sustain the Districts' fourth and fifth points to the effect that the court erred in rendering a declaratory judgment (1) that the Commissioners' Court does not have the power, and so no duty, to levy taxes annually, etc., upon the property in the Drainage Districts sufficient to maintain, keep in repair and preserve the drainage improvements, and (2) (this point complains that the court failed to render a declaratory judgment to the effect that the Commissioners' Court had the power, and the duty to levy annually maintenance taxes. The District Court did make it clear that the only reason he held that the Commissioners' Court had no duty to so levy said taxes was because he held that it had no power so to do).

█ The Districts complain of the court's refusal to set aside the order of the Commissioners' Court which rescinded the 1954 levy of the maintenance tax. What has been stated above in practical effect requires that we also sustain this point. Anyone aggrieved at an order or judgment

of the Commissioners' Court can have same reviewed by bringing a direct proceeding in the District Court for that purpose. Harris County v. Bassett, Tex.Civ.App., 139 S.W.2d 180 (writ refused). The Commissioners' Court, correctly believing originally that it had the power to levy maintenance taxes for 1954, did so. Then, for the sole reason that it accepted the Attorney General's ruling that it had no such power, the Commissioners' Court rescinded its order making such levy. There is no question here involved of the Commissioners' Court's discretion. It had exercised its discretion in fixing the tax, but solely because of the aforesaid ruling by the Attorney General it acted to rescind said order.

We deem it unnecessary to discuss appellants' other points.

The judgment of the District Court is here reversed, and judgment is rendered that the Commissioners' Court set aside its order rescinding the 1954 maintenance tax levy, and it is here adjudged and declared that the Commissioners' Court has the power and duty to order such levy. There is no reason to anticipate that the Commissioners' Court will not follow the law as finally adjudged in this case. Should said court fail to do so, it will then be time enough to issue injunctions or writs of mandamus.

Reversed and rendered.

### Appendix

"Dear Mr. Peden:

"Your letter of September 17, 1954, presents the following question:

"'Does the Commissioner's Court have authority to levy and cause to be collected a maintenance tax for a drainage district created pursuant to Section 52, Article 3, Constitution of Texas, and the General Laws of the State of Texas (Chapter 7, Title 128, Revised Civil Statutes) where there has been no election to authorize such tax and where all bonds of the district have been retired?'

"Although the state has the inherent power of taxation, a political subdivision, such as a drainage district created under Article 3, Section 52, of the Texas Constitution, has only such taxing power as granted by the Constitution and applicable statutes. Dallas County Levee District No. 2 v. Looney, 109 Tex. 326, 332, 207 S.W. 310 (1918); Wharton County Drainage District No. 1 v. Higbee, Tex.Civ.App., 1912, 149 S.W. 381, error refused.

"Article 8138, Revised Civil Statutes, 1925, reads, in part, as follows:

"'At the same time that taxes are levied to meet the bonded indebtedness, the court shall cause to be assessed and collected taxes upon all property in the district, whether real, personal or otherwise, sufficient to maintain, keep in repair, and to preserve the improvements in the district, and to pay all legal, just and lawful debts, demands and obligations against such district. * * *'

"There being no bonded indebtedness, the district would have no right, under the above statute, to levy a maintenance tax.

"Thus, it becomes unnecessary to determine the second phase of your question as to whether a maintenance tax can be levied with the affirmative permission being given by those entitled to vote.

"Your question is answered in the negative.

"Very truly yours,

John Ben Sheppard
By Elbert M. Morrow, Assistant."