

# THE ATTORNEY GENERAL
## OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

December 27, 1990

Honorable Charles D. Penick
Criminal District Attorney
804 Pecan Street
Bastrop, Texas 78602

Opinion No. JM-1276

Re: Authority of road district to borrow money, of county to guarantee its repayment, and related questions (RQ-1792)

Dear Mr. Penick:

Based upon the following factual representations, you have asked that we address fourteen questions dealing with the relationship of Bastrop County (and the members of its commissioners court) to a county road district wholly contained within the county and created pursuant to article III, section 52, of the Texas Constitution and the procedures set forth in the County Road and Bridge Act, article 6702-1, V.T.C.S.[1]

In May of 1987, the commissioners court of Bastrop County received a petition calling for an election to create a road district and to issue bonds in an amount not to exceed $360,000.[2] Following the hearing on the petition, the court issued its order authorizing an election on the creation of the district, the issuance of bonds in the amount of $400,000, and the levying of a tax in payment

---

1. Disputed fact issues are not determined in the opinion process of this office. We merely apply the law to the facts given us.

2. The County Road and Bridge Act does not require the creation of a road district to be initiated by a petition of interested property owners. See V.T.C.S. art. 6702-1, § 4.413(a) (commissioners courts "in their sole discretion" may establish road districts). A petition must be offered, however, prior to an election on whether to issue road district bonds. Id. § 4.416.

thereof.  The election was held  and the voters in the  territory of the proposed district approved the creation of the district and the  issuance of $400,000  in bonds to  finance improvements to the roads.   You state that the bonds were to be repaid by the collection of ad valorem taxes.

Following sale of  the bonds and  during the course  of construction, it was determined that more work was needed to complete the roads, and a change order authorizing the additional work was approved by the commissioners court in their capacity as ex-officio directors of the road district.[3]   It was later  determined that  the $400,000  approved  by  the voters at  the  bond  election would  not  cover  all  costs related to the  road project, including  costs of  construction, bond  issuance, engineers  fees, and  attorneys  fees. The deficiency amounted to $50,000, money that the  district does not have.

To remedy this, a proposal was brought before the  commissioners court asking that  they "resolve to stand  behind the Road District  in an  attempt to borrow  $50,000 from  a bank," because the bank would not make the loan without  the county's guarantee.  As we  understand it, the proposal  has not been acted upon and the $50,000 remains unpaid.

Finally, you  state that  the commissioners  court  has levied taxes in an amount  sufficient to repay the  $400,000 according to the terms of amortization contained in the bond documents.  In addition,  the commissioners  court levied  a tax sufficient to collect the $50,000 that remains outstanding over a period of five years.

With the foregoing facts in mind, we turn to your questions.

You first ask:

---

3.   The commissioners court acts as the  administrative body of the road district.   See id. §§ 4.435 (contracts  of over $50 must be approved by the commissioners court),  4.457 (commissioners court shall levy  taxes to pay road  district bonds); see also 36 D.  Brooks, County and Special  District Law § 40.39 (Texas  Practice 1989).  A  road district  is nevertheless a  separate and  independent political  entity, declared a body corporate with the power to sue and be sued, V.T.C.S. art. 6702-1, § 4.432, contract, and hold  property. Brooks, supra § 40.36.

1. Is the election valid even though the notice that was posted calling for a public hearing stated an amount of $360,000 and that amount was changed at the public hearing to $400,000?

Section 4.417 of article 6702-1 authorizes the commissioners court to "change the amount of the bonds proposed to be issued" if, on the hearing of a petition for an election required by section 4.416(b) of the act, "the change is found necessary or desirable." See Attorney General Opinion WW-462 (1958). Thus, the election was not rendered invalid because the amount of the bonds to be voted upon was changed as a result of the required public hearing.

Secondly, you ask:

2. Can the Road District created under art. 6702-1 [V.T.C.S.] borrow money in any other manner than through the issuance of bonds as set out in the statute?

We conclude that road districts may borrow money by methods other than through the issuance of bonds, but the creation of such debt is governed by article III, section 52, of the Texas Constitution and legislation enacted pursuant to that provision.

Article III, section 52, provides the following in pertinent part:

> (b) Under Legislative provision . . . any defined district . . . upon a vote of two-thirds majority of the resident property tax-payers voting thereon . . . in addition to all other debts, may issue bonds or otherwise lend its credit in any amount not to exceed one-fourth of the assessed valuation of the real property of such district . . . and levy and collect taxes to pay the interest thereon and provide a sinking fund for the redemption thereof, as the Legislature may authorize, and in such manner as it may authorize the same, for the following purposes to wit:
>
> . . . .
>
> (3) The construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof.

Tex. Const. art. III, § 52(b)(3).

County road districts are "defined districts" within the meaning of article III, section 52. See Anderson County Road Dist. No. 8 v. Pollard, 296 S.W. 1062 (Tex. 1927); cf. V.T.C.S. art. 6702-1, § 4.445(a) (". . . in any road district or other defined district"). A road district may therefore issue bonds or "otherwise lend its credit" upon a two-thirds majority vote under legislative provision.

Section 4.411(b) of the road and bridge act provides that

> any road district may issue bonds, tax antic-
> ipation notes, bond anticipation notes, or
> other obligations for the purpose of the
> construction, acquisition by purchase,
> maintenance, and operation of macadamized,
> graveled, or paved roads and turnpikes or in
> aid of these purposes . . . .

Bonds "shall be issued in the manner provided in [part 2 of this act] and as contemplated and authorized by Article III, Section 52, of the Texas Constitution." Negotiable bond anticipation notes and tax anticipation notes may be issued in the event funds are not available to pay principal and interest obligations on bonds (and an emergency is declared regarding the matter) "or to meet any other needs." V.T.C.S. art. 6702-1, § 4.411A(a).

Bond anticipation notes may be issued for any purpose for which the district's bonds may have previously been approved or for the refunding of previously issued bond anticipation notes. The commissioners court may covenant with purchasers of the notes that it will use the proceeds of the sale of any bonds yet unissued for the purpose of refunding the notes. Id. § 4.411A(c). Because you state that all bonds of the road district in this instance have been sold, it may not take advantage of these instruments.

Tax anticipation notes may be issued for any purpose for which the road district may levy taxes under the act. These notes are secured with the proceeds of the taxes to be levied by the district in the succeeding 12 months, but the notes are not expressly required to mature within that period. See id. § 4.411A(b). The commissioners court may covenant with purchasers that it shall levy a tax sufficient

to pay principal and interest on the notes and the costs of collecting the taxes. Id.[4]

Road districts can only levy taxes for the purpose of paying principal of and interest on its bonds, id. § 4.425, and bonds may only be issued following approval of the requisite number of voters. Id. § 4.422. See 36 D. Brooks, County and Special District Law § 40.40 (Texas Practice 1989). The ability of a road district to issue tax anticipation notes is thus tied to the previous approval of district bonds by the voters, and the value of such notes is necessarily limited by the amount of outstanding bonded indebtedness. Moreover, the power of a road district to borrow in this manner is subject to voter approval under article III, section 52. See Attorney General Opinion O-763 (1939) (road district may issue time warrants if approved by voters and if tax sufficient to pay interest and provide sinking fund is levied).

We are aware of no other legislative provision authorizing a road district to incur debt.

Your third question is:

> 3. Can the Road District borrow money in an amount in excess of the amount voted on by the residents of the Road District without the necessity of another election?

---

4. This provision may have been meant to allow the creation of short-term debts payable with current revenues, thereby avoiding the constitutional restriction on the assumption of debt without establishing an interest and sinking fund and levying a sufficient tax therefor. See Tex. Const. art. XI, § 7; McNeill v. City of Waco, 33 S.W. 322 (Tex. 1895). Such debts must, however, be satisfied with revenues from the current budget year; taxes collected in future budgets years cannot be pledged as security within the meaning of this prohibition. See generally City of Fort Worth v. Bobbitt, 41 S.W.2d 228, 232 (Tex. Comm'n App. 1931, original opinion adopted); McClellan v. Guerra, 258 S.W.2d 72 (Tex. 1953). See also Bolton v. Wharton, 161 S.E. 454, 459 (S.C. 1931) ("tax anticipation notes" are not bonds, to which the general credit of the municipality is pledged, but are merely obligations payable solely out of particular taxes, and must be issued before taxes are due and in the year in which they are collectible).

Bonds issued in excess of the amount authorized by the voters are treated as void. See Ball v. Presidio County, 29 S.W. 1042 (Tex. 1895).[5] And as the discussion of bond anticipation notes and tax anticipation notes observed, the amounts a road district may borrow through these means is limited either to the amount of unissued bonds or the amount of bonds outstanding. Article III, section 52, of the constitution authorizes such districts to incur such debt only upon a two-thirds vote of the electorate. The road district therefore must obtain voter approval to incur debt in excess of the amount originally authorized by the voters.

Next, you ask:

> 4. Can Bastrop County loan money to the Road District?

Section 4.401 of article 6702-1 authorizes the commissioners court of a county to invest sinking funds accumulated for the redemption and payment of bonds issued by the county in bonds (of proper maturity) of any road district of the state. Cf. V.T.C.S. art. 842a-2 (Public Funds Investment Act); V.T.C.S. art. 4413(34c) (investment of local funds).

But, otherwise, a county has no authority to loan money to a road district. In the eyes of the law they are distinct and separate governmental units. Subsection (a) of article III, section 52, of the constitution states that the legislature shall have no power to authorize any county to lend its credit or grant public money to any individual, association, or corporation whatsoever except as otherwise constitutionally provided. See Harris County Flood Control Dist. v. Mann, 140 S.W.2d 1098, 1105 (Tex. 1940).

Your fifth question reads:

> 5. If the Road District can borrow money in a manner other than the issuance of Bonds

---

5. The Ball case concerned courthouse and jail bonds, and was decided under a law that required an order of the commissioners court, rather than an election, to authorize the bonds. Bond elections now perform the function previously performed by such orders of the commissioners court. See San Saba County v. McCraw, 108 S.W.2d 200 (Tex. 1937) (taxing power delegated to voters).

                    can the Commissioners Court guarantee the
                    note?

The other legislatively sanctioned methods of borrowing by a road district -- bond anticipation notes and tax anticipation notes -- were discussed in our answer to your second question. In light of that response, we need not address this question.

Your sixth question asks about the authority of a county to borrow money for a period in excess of one year.

            6. Can the county borrow money from a bank
               for a period of more than one year if the
               note is set up to come due and be renewed
               on an annual basis within the county's
               budgetary year?

Counties may incur such debt only for county purposes, only by obtaining the necessary consent of the electorate, when applicable, see Henderson County v. Allred, 40 S.W.2d 17, 19 (Tex. 1931), and by establishing the requisite sinking fund and taxation provisions. See Tex. Const. art. XI, § 7; McClellan v. Guerra, supra; cf. Local Gov't Code § 271.053 (certificates of obligation). A note reasonably anticipated to be paid from current funds of the county during the county's budgetary year does not create an article XI, section 7 debt, however. See McNeill v. City of Waco, 33 S.W. 322 (Tex. 1895). However, a note set up to come due and be renewed on an annual basis would not appear to meet this requirement.

You also ask:

            7. Can the tax collector and the Commis-
               sioners Court levy a tax on the residents
               of the Road District created under art.
               6702-1 to collect monies over the amount
               voted on by the residents in the election
               creating the Road District and authorizing
               the issuance of Bonds?

In accordance with our previous answers, the commissioners court may levy and collect road district taxes only in an amount "sufficient to pay the principal of and interest on" bonds of the district. V.T.C.S. art. 6702-1, §§ 4.425, 4.457. Taxes in excess of that amount may be levied to discharge any authorized, tax-secured, indebtedness left unpaid as a result of casual loss (for example, the failure of the county depository). Henson v. Commissioners

Court of Henderson County, 56 S.W.2d 240 (Tex. Civ. App. - Dallas 1932, writ ref'd). Your description of the facts, however, does not indicate that any loss of tax funds has occurred. Rather, it appears that the funds authorized by the voters were inadequate to meet the need for which they were authorized.

Question number eight is:

> 8. Once the tax rate is established and the tax is levied and it is determined to be an illegal tax, can the Commissioners Court change that tax on their own motion or on the motion of a property owner, or does the property owner have to file a lawsuit to enjoin the tax collector from collecting an illegal tax?

When the commissioners court levies a tax illegally, the remedy of injunction is available to a taxpayer prior to the time the tax plan is put into effect and intervening rights have vested. See City of Arlington v. Cannon, 271 S.W.2d 414 (Tex. 1954). We think the commissioners court may do voluntarily what it properly can be required to do by a writ of injunction and that it has no authority to collect an invalid levy. See, e.g., Matagorda County Drainage Dist. No. 1 v. Commissioners Court of Matagorda County, 278 S.W.2d 539 (Tex. Civ. App. - Galveston 1955, writ ref'd n.r.e.).

The ninth question is:

> 9. Can the Commissioners be liable individually for their actions as ex-officio directors of the Road District if it is determined that they were negligent in their actions?

Whether county commissioners in a particular case may be held personally liable in damages for negligence in the handling of road district affairs can be determined only upon a review of facts beyond those provided us. See generally 35 D. Brooks, County and Special District Law § 2.30 (Texas Practice 1989). Questions such as this cannot be usefully addressed in an opinion of the attorney general, but should instead be answered by the legal advisor to the commissioners court upon the development of appropriate facts. See Attorney General Opinion JM-1224 (1990) at 15.

Your next question reads:

> 10. What duty does the Criminal District
>     Attorney have to represent the Road
>     District in any litigation if the Road
>     District was represented by private
>     counsel from its inception?

We understand you to ask about the duty to represent the road district in civil litigation, since the criminal district attorney would be required to represent the state in any criminal proceedings involving the road district. Gov't Code § 44.111(a) (criminal district attorney of Bastrop County shall represent the state in all criminal matters before the district and inferior courts and any other court in which the county has pending business).

The criminal district attorney of Bastrop County is assigned "all the powers, duties, and privileges in Bastrop County that are conferred by law on county and district attorneys in the various counties and districts." Gov't Code § 44.111(b). It is not one of the county attorney's prescribed legal duties to represent the county in its general legal business or in the conduct of ordinary civil actions. Hill Farm, Inc. v. Hill County, 425 S.W.2d 414 (Tex. Civ. App. - Waco 1968), aff'd on other grounds, 436 S.W.2d 320 (Tex. 1969). The same rule prevails when the duties of the county attorney are discharged by a criminal district attorney. See Tarrant Appraisal Dist. v. Colonial Country Club, 767 S.W.2d 230, 236 (Tex. App. - Fort Worth 1989, writ denied). Since the criminal district attorney of Bastrop County can not be compelled to represent Bastrop County in ordinary civil actions, we conclude he is under no duty to represent a road district of the county in similar circumstances. See Attorney General Opinion S-03 (1953) (criminal district attorney for Harris County is under no duty to represent county flood control district in civil cases).

Your next question reads:

> 11. Is the county responsible for any of the
>     debt that was incurred by the Commis-
>     sioners acting as ex-officio members of
>     the Road District?

Bastrop County and the road district are separate and distinct governmental units. Neither is responsible for the debts of the other, although it is possible for the county, according to sections 4.451-4.453 of article 6702-1, V.T.C.S., to issue "compensation bonds," upon a vote of the

county electorate, to "purchase" the district's roads, thereby relieving the district of its debt.

If the road district is indebted to the contractor as a result of the actions of members of the commissioners court purporting to act for the road district, it is a road district, and not a county, debt. Nor is the county responsible if the members of the court have become personally liable as a result of actions taken for the purported benefit of the road district, which were not in their capacities as officers acting for the entire county. See generally V.T.C.S. art. 6702-1, § 4.432; Harris County v. Gerhart, 283 S.W. 139 (Tex. 1926); Attorney General Opinion JM-153 (1984).

The twelfth in your series of questions is:

> 12. Can the Commissioners Court hire an attorney and pay that attorney out of county funds to defend them in any action brought against them in their capacity as ex-officio directors of the Road District or do the funds for representation have to come from the Road District?

We advise that county funds may not be used for such purposes, and whether road district funds may be spent for such purposes must be determined in light of the facts of the case.

As amended in 1989, section 157.901 of the Local Government Code reads:

> (a) A county official or employee sued by any entity, other than the county with which the official or employee serves, for an action arising from the performance of public duty is entitled to be represented by the district attorney of the district in which the county is located, the county attorney, or both.

> (b) If additional counsel is necessary or proper in the case of an official or employee provided legal counsel under Subsection (a) or if it reasonably appears that the act complained of may form the basis for the filing of a criminal charge against the official or employee, the official or employee is entitled to have the commissioners

court of the county employ and pay private
counsel.

(c) A county official or employee is not
required to accept the legal counsel provided
in this section.

This provision does not apply to non-county officers
and employees. See Attorney General Opinion MW-252 (1980)
(predecessor to section 157.901 does not apply to district
offices). It is therefore inapplicable to members of the
commissioners court for action taken in their capacity as
administrators of the road district.

Section 157.901 is declaratory of part of a common rule
regarding the employment of legal counsel by a public body
for its officers and employees, but it does not supplant the
common-law rule. Attorney General Opinions JM-824, JM-755
(1987); MW-252). The common-law rule allows a public
entity, such as a county or special district, to employ
attorneys to defend public officers and employees when its
governing body believes that the legitimate interests of the
public entity -- and not merely the personal interests of
the officer or employee -- require the assertion of a vigo-
rous legal defense on behalf of the public interest. See
Attorney General Opinions JM-824, JM-755 and authorities
cited therein. The governing body may provide such
representation when it determines that the public officer or
employee acted in good faith and within the scope of an
official duty. Id. Whether a particular lawsuit involves
the legitimate interests of either the county or the road
district is always a question of fact that must await the
good faith determination of the governing body of the county
or road district in light of all relevant facts. Id.

Two other things should be noted about the common-law
rule. First, it is permissive -- it does not require the
public body to employ attorneys to represent its officers
and employees.[6] Second, the common-law rule does not limit
a county to employing legal counsel only for officials and
employees of the county government. It would, for example,
allow a county to pay costs adjudged against the district

---

6. Section 157.901, on the other hand, "entitles"
county officials and employees to legal representation by
the county or district attorney under the conditions
described therein.

attorney and certain fees relating to a lawsuit filed against him, provided the commissioners court reasonably believed the county's interests were at stake and the lawsuit arose from actions taken by the district attorney in the performance of his public duties. Attorney General Opinion MW-252; see also Attorney General Opinion H-544 (1975) (county's authority to pay legal expenses of district judge in defending lawsuit arising from conduct of court of inquiry by judge). The county's authority to pay for such matters on behalf of non-county officials, however, must arise either expressly or impliedly by statute, e.g., statutory provisions requiring the county to pay the expenses of the district attorney's office or expenses connected to courts of inquiry. See Attorney General Opinions MW-252; H-544.

Since the expenses of the road district in this instance are not borne by the county, neither section 157.901 nor the common-law rule would authorize the county to pay for the defense of members of the commissioners court in lawsuits arising from actions taken in their capacity as ex- officio directors of the road district. Whether the commissioners court, acting as directors of the road district, may spend road district funds to employ attorneys to defend their actions is a question of fact that cannot be determined by this office.

Another provision that should be consulted is section 102.004 of the Civil Practice and Remedies Code. This section allows a local government (which is defined to include a county or special district) to provide legal counsel to represent a defendant for whom the local government may pay damages under chapter 102, i.e. current or former officers and employees, or their estates. Civ. Prac. & Rem. Code § 102.004(a); see also id. §§ 102.001(1) (definition of "employee"), 102.002(a), (b) (payment of actual damages, attorneys fees, and court costs awarded against an "employee"). The county thus is not authorized under section 102.004 to pay for the representation of the commissioners court in these circumstances. The counsel may be the local government's regularly employed counsel, provided there is no potential conflict of interest between the local government and the defendant, in which case other counsel may be employed. Id. § 102.004(a).

A local government may pay damages that result from an act or omission of the employee or officer in the course and scope of his employment and that arise from a cause of action for negligence. Id. 102.002(a). The local government may not, however, pay damages awarded against an

officer or employee that arise from a cause of action for official misconduct or from a cause of action involving a wilful or wrongful act or omission or an act or omission constituting gross negligence. Id. 102.002(c).

You do not indicate what possible causes of action may be brought against the commissioners court, and we decline to speculate on such possibilities. The foregoing discussion, however, should assist you in determining the duty of the road district to pay for the legal representation of the county commissioners in their capacity as ex-officio directors of the road district.

Your thirteenth question is:

> 13. If the answer to number 12 is no and the Criminal District Attorney cannot represent the Road District, can the Road District obtain funds from any source for legal representation other than through the issuance of bonds after an election authorizing same?

In view of our answers to your second, third, and tenth questions, it is unnecessary to address this question.

Your final question reads:

> 14. Can the method of taxation of the residents in the Road District be changed from an Ad Valorem Taxation to a tax on a per lot basis without another election authorizing the change, since the bonds were issued based upon an Ad Valorem method of taxation?

Section 4.425 of article 6702-1, V.T.C.S., the County Road and Bridge Act enacted in 1983, provides:

> Each year that bonds are outstanding, taxes shall be levied sufficient to pay the principal of and interest on the bonds. Taxes shall be levied in accordance with the procedures for taxation set forth in Sections 51.502 through 51.506, Water Code. To the extent that the provisions of this Act refer to ad valorem taxes, such provisions shall be deemed to refer to taxes levied on any basis of taxation for which provision is herein made if the commissioners court determines to

> levy on a basis other than an ad valorem basis.

The sections of the Water Code referenced in section 4.425 require the conduct of a public hearing to determine "whether the taxes to pay the construction bonds and maintenance, operation, and administrative costs of the district shall be levied, assessed, and collected on:

> (1) the ad valorem basis;
>
> (2) the basis of assessment of specific benefits;
>
> (3) the basis of assessment of benefits on an equal sum per acre; or
>
> (4) the ad valorem basis for part of the total tax or defined area or property and on the benefit basis for the other part of the tax or defined area or property.

Water Code § 51.502. Chapter 51 of the Water Code relates to water control and improvement districts, which may be created under either article XVI, section 59, or article III, section 52, of the constitution. See Water Code § 51.011.

Section 4.427 of article 6702-1, provides the following:

> When the bonds are issued for and on the faith and credit of a political subdivision or road district, the taxes shall be assessed and collected in the same manner as for the assessment and collection of common school district taxes.

Common school district taxes are levied strictly on an ad valorem basis. Educ. Code §§ 20.01, 22.11. It is unnecessary to consider whether sections 4.425 and 4.427 are in conflict, because the commissioners court in this instance is prohibited from changing the basis on which the taxes of the road district are levied.

The order of the commissioners court calling the 1987 bond election in the road district contains the question to be submitted to the voters and reads in pertinent part:

Honorable Charles D. Penick - Page 15  (JM-1276)

> Whether or not  the bonds  of Bastrop  County
> Road District No. 3 shall be  issued . . . to
> bear interest at such rate or  rates . . . as
> in its discretion the Commissioners' Court of
> Bastrop County, Texas  shall  determine  and
> shall ad valorem taxes be levied [sic] on all
> taxable property in said District subject  to
> taxation  for  the  purpose  of  paying  the
> interest on  said  bonds  and  to  provide  a
> sinking  fund   for   their   redemption   at
> maturity?

Order of the Commissioners Court of Bastrop County,  calling for a bond election  in Bastrop County  Road District No.  3 (June  22,  1987).   This  language,  though  ungrammatical, clearly conveys the understanding  that the bonds issued  by the road district would be retired through the collection of ad valorem taxes, and the  voters who approved the  issuance of the bonds on  this basis are entitled  to the benefit  of that understanding.

In San  Saba County  v. McCraw,  108 S.W.2d  200  (Tex. 1937), the  supreme  court  ruled that  the  conditions  and safeguards surrounding  a  tax  voted  upon  by  the  people pursuant to constitutional  provision become a  part of  the election itself  and cannot  be  impaired and  destroyed  by subsequent legislatures.  The law treats such conditions  as a contract with the voters, and any attempt to substantially alter the  rights and  expectations of  the voters  will  be treated as  a  violation  of  the  constitutional  provision authorizing the vote  and of  article I,  section 16,  which prohibits laws impairing the  obligation of contracts.  Id. at 203.

The rule expressed  in San Saba  County v. McCraw  also applies to  the  order  adopted  by the  commissioners  court calling for an election on whether to issue bonds for public roads.  A  long  line  of  cases  holds that  the  conditions expressed in the  order become  a solemn  contract with  the voters, and the voters are entitled to receive substantially all of  the  benefits and  security  of the  contract.  See Fletcher v. Howard,  39 S.W.2d  32 (Tex.  Comm'n App.  1931, opinion adopted);  Moore  v.  Coffman,  200  S.W.  374  (Tex. 1918).

The commissioners  court  is  therefore  prohibited  by article I,  section 16,  of  the constitution  from  levying taxes for the road district  on the benefits basis  pursuant to section 4.425  of the  County Road  and  Bridge Act.  San Saba County v. McCraw, supra.

## S U M M A R Y

A county road district bond election is not rendered invalid if the amount to be voted upon is changed after a public hearing. A county road district may borrow money by issuing tax anticipation notes and bond anticipation notes as well as bonds, but it may not do so unless authorized by the electorate in accordance with article III, section 52, of the constitution. It may not borrow money in excess of the amount of the amount so authorized.

A county is not responsible for debts incurred by members of the commissioners court acting for a county road district. A county may not loan money to a road district, but it may invest sinking fund monies in the bonds of the road district. Nor may a commissioners court, acting for the county, guarantee the note of a road district. A county can borrow money for a period of more than a year by complying with constitutional requirements.

The tax collector and the commissioners court cannot ordinarily levy or collect a tax in a road district in excess of the amount voted by the electorate.

Whether members of a commissioners court may be personally liable for their management of road district affairs cannot be answered in an opinion of the attorney general. A criminal district attorney is under no obligation to represent a road district of his county in civil proceedings. County funds may not be used to pay for the legal representation of members of the commissioners court for actions taken in their capacity as ex-officio directors of a road district; whether road district funds may be spent for such purposes is a question of fact.

The ad valorem basis of taxation in the county road district cannot be changed to a "benefits" basis if the order of the commissioners court calling the election on the

issuance of the bonds states that such  bonds
will be retired through the collection of  ad
valorem taxes.

Very truly yours,

JIM  MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Steve Aragon
Assistant Attorney General